HACKMAN, ET AL., PLAINTIFFS, v. CITY OF HELENA, ET AL., DEFENDANTS.

No. 9254.

Submitted November 22, 1952. Opinion filed May 1, 1953.

256 Pac. (2d) 692.

6

Mr. Chief Justice Adair dissented.

Mr. Ralph J. Anderson, Mr. Stanley P. Sorenson, and Mr. Myles J. Thomas, Helena, for appellant.

Mr. David R. Smith, Helena, for respondent.

Mr. Lloyd J. Skedd, Helena, amicus curiae.

Mr. Anderson, Mr. Thomas, Mr. Smith and Mr. Skedd argued orally.

PER CURIAM.

This is a proceeding to enjoin a special city election in Helena. The purpose of the election is to vote on the question of abandoning the present organization of city government and to reorganize under the commission-manager form of government under R. C. M. 1947, sec. 11-3201, which provides: "Any municipality may abandon its organization and reorganize under the provisions of this act, by proceeding as hereinafter provided." The only question presented is whether it is proper to hold a special election for those purposes.

R. C. M. 1947, sec. 11-3202, specifically authorizes the ordering of a special election. It is contended that that section has been amended by Chapter 105, Laws of 1951. Chapter 105 is an amendment of R. C. M. 1947, secs. 11-3135 and 11-3136. Those sections were a part of Chapter 57, Laws of 1911, being R. C. M.

1947, sec. 11-3101 et seq., and relate to the matter of changing from a commission form of government to the aldermanic form.

Chapter 105 requires submission of the questions as follows: "Shall the city of (name of city) abandon its organization under Chapter 57 of the Acts of the Twelfth Legislative Assembly and become a city *under the general law governing cities of like population;* or if formerly organized under special charter shall resume said special charter?"

The only "general law of the state then applicable to cities of [like] population" is R. C. M. 1947, sec. 11-701 et seq., relating to the aldermanic form of city government. Those sections provide for certain officers of the cities according to the class of city which is determined by its population under R. C. M. 1947, sec. 11-201 et seq.

Likewise the fact that Chapter 105 refers only to changing to the aldermanic form of government is evidenced by the provision to the effect that if the majority of votes favor the proposition the officers shall be chosen at the next succeeding biennial election. Section 11-709 provides for biennial elections in aldermanic forms of government. On the other hand, when changing to the commission-manager plan if the majority favor the proposition, a special election is provided for, for the purpose of electing commissioners. R. C. M. 1947, sec. 11-3206.

It is plain to us that the legislature did not intend by Chapter 105, Laws of 1951, to change R. C. M. 1947, sec. 11-3206, or any other of the provisions of section 11-3201 et seq. Chapter 105 does not affect section 11-3202 et seq., where the change is sought to be made from the commission form of government to the managerial form as here.

Its provisions have application only to a contemplated change from a commission form to the aldermanic form. It is contended that this conclusion renders section 11-3201 et seq., unconstitutional as special legislation. This conclusion does not follow. By their terms section 11-3201 et seq., are made applicable to all municipalities. Those sections simply provide the only procedure to be followed if a city desires to change

from its existing government to the commission-manager form.

The dissenting opinion stresses the clause found in Chapter 105, Laws of 1951, to the effect that the proposition "shall be placed upon the ballot at the next regular city election". It overlooks the fact that the "proposition" referred to in Chapter 105 is to "accept the provisions of the general law of the state then applicable to cities of its population."

That is not the proposition which was proposed to be submitted to the Helena voters. The proposition here involved was that provided under the statute relating to the commission-manager plan, R. C. M. 1947, sec. 11-3202, the important part of which was "to reorganize under this act." That statute provides that the city or town council shall "order a special election to be held, at which election the question of reorganization of such municipality under the provisions of this act shall be submitted to the qualified electors of such municipality." There is no repugnancy between section 11-3202 and Chapter 105, Laws of 1951. They relate to different propositions. One is to adopt the commission-manager plan of city government and the other to adopt the provisions of the general law of the state applicable to cities of its population, which as above noted is the aldermanic form of city government.

What the people of Helena sought was the matter of adopting the commission-manager form which is provided for by section 11-3202 and by that alone. That section in plain terms requires that the proposition shall be submitted to the voters at a special election.

The writ applied for is denied and the temporary restraining order is dissolved, and the proceeding dismissed.

MR. CHIEF JUSTICE ADAIR: (dissenting).

In the late summer of 1864, gold was discovered in the little gulch where has since grown the present capitol city of this state.

At a miners' meeting there held on July 20, 1864, certain laws and regulations were adopted wherein the gulch was named Last Chance Gulch.

At a second miners' meeting held October 30, 1864, three town commissioners, namely: Captain George J. Wood, H. Bruce and C. L. Cutler, were appointed to lay out a town as well as to adopt a name for the settlement. It was decided that Last Chance Gulch was not a suitable name for the rapidly growing camp and Helena was adopted as the name of the settlement.

On the heels of the early prospectors and placer miners came the merchants and bankers who immediately began directing the local affairs. Their first meeting was held January 21, 1866. This meeting was protective in its object and was held for the purpose of considering and determining upon the course to be pursued in the matter of the seizure and threatened confiscation of goods consigned to them.

*Special Laws.* In 1867 the fourth legislative assembly of the Territory of Montana, passed a *special law,* being an Act entitled: ''An Act to incorporate the City of Helena.'' This Act was approved December 24, 1867, and provided for a city government to be composed of a mayor and a board of aldermen consisting of two members from each of four wards into which the city was divided. See Laws of Fourth Session of Territorial Legislative Assembly, pp. 249-253.

At an election held on January 20, 1868, the question of accepting the charter set forth in the foregoing *special Act* of 1867, was defeated.

In 1881, the twelfth legislative assembly of the Territory of Montana passed another *special law,* being an Act entitled: ''An Act to incorporate the City of Helena.'' This Act, being House Bill 94, was approved by Governor B. F. Potts on February 22, 1881, and provided for the submission to the qualified voters of Helena of the charter set forth and incorporated in the Act which provided for a city council to consist of a mayor and a board of aldermen. See Special Laws of Twelfth Territorial Legislative Assembly, pp. 112-121.

The question of city government provided for in the above *special Act* of February 22, 1881, was submitted to the people of Helena on March 7, 1881, with the result that 620 votes were

in favor of the establishment of a city government and 262 votes against. Thus did the electors approve the charter of 1881 under which the organization of the city of Helena was effected.

The first election under the charter was held April 4, 1881, at which a mayor, a city treasurer, a police magistrate and ten aldermen were elected. The first regular meeting of the council so elected was held April 14, 1881, at which A. M. Holter, a leading pioneer merchant was elected chairman of the council.

In 1885 the fourteenth legislative assembly of the Territory of Montana passed a *special law* entitled: "An Act to amend an act entitled: 'An act to incorporate the city of Helena,' approved February 22, 1881." This amendatory Act was approved January 30, 1885. The Act provided for the election of a chairman of the city council, who in the absence of the mayor shall preside at the meetings of the council and discharge the duties of the mayor in case of the absence of the mayor from the city. See Special Laws of Fourteenth Regular Assembly of the Territory of Montana, pp. 187, 188.

*General Laws—Montana Codes of 1895.* After Montana became a state the *general laws* were codified and such codification was adopted as the Montana Codes Annotated of 1895. Sections 4700 to 5133 of Title III of the Political Code of 1895 provided for the government of cities and towns.

Section 5032, Political Code of Montana of 1895, provided: "All cities and towns existing or heretofore incorporated under the laws of the territory or state of Montana, either under general or *special laws or charters,* on the adoption of this code become and are incorporated under the provisions of this title * * *, and have the powers conferred, or that may hereafter be conferred by law, upon cities or towns of the class to which each may belong." Emphasis supplied. Section 5032, supra, is now R. C. M. 1947, sec. 11-207.

Section 5033 of the Political Code of Montana of 1895 provided: "Such cities or towns are and become cities of the first or second class or towns according to their population as de-

termined by the federal census of 1890." Section 5033, supra, is now R. C. M. 1947, sec. 11-208.

Section 5034 of the Political Code of Montana of 1895, *inter alia*, provided: "* * * All elections must be held under the provisions of this title". Section 5034, supra, is now R. C. M. 1947, sec. 11-209.

*General Laws—Revised Codes of 1907.* The Revised Codes of Montana of 1907 contain the *general laws* of this state theretofore enacted, Title III, Part IV, of the Political Code, secs. 3202 to 3549, providing for the government of cities and towns.

In 1911 the twelfth state legislative assembly enacted chapter 57, Laws of 1911, being a *general law* and entitled: "An Act providing for a commission form of government for cities, providing for the election of officers therein, defining their duties and powers and providing for their compensation." These *general laws* became and now are sections 11-3101 to 11-3137, inclusive, of the Revised Codes of Montana of 1947.

In 1915 the voters of the city of Helena elected to abandon the city's then organization under the aldermanic form of government and thereupon reorganized under the commission form provided for by Chapter 57, Laws of 1911, now Chapter 31 of Title 11, secs. 11-3101 to 11-3137, inclusive, of the Revised Codes of Montana of 1947.

Upon so organizing under and accepting the provisions of the general law of the state particularly applicable to the commission form of city government (now Ch. 31, Title 11, R. C. M. 1947) the city of Helena was thereupon and thereafter required to observe and obey such provisions and to operate thereunder so long as such city continued to be organized and operating under the commission form of government.

After first trying out and operating under such new form of government for more than one year, the city was then privileged to submit to its qualified voters the proposition of whether such city shall abandon its organization under Chapter 57, Laws of 1911, (now Ch. 31, Title 11, R. C. M. 1947) and become a city under the general law governing cities of like

population at the time the city shall vote to abandon its organization under the provisions of the Act, Ch. 57, Laws of 1911.

However, until such time as the requisite number of qualified voters, at a valid city election, determine to abandon the city's organization under the provisions of Chapter 57, Laws of 1911, the city must continue to obey, observe and operate under such provisions. Thus to lawfully abandon its said organization, the city and its officers, including its mayor and commissioners, must comply with the particular and mandatory provisions of the sections 32 and 33 of Chapter 57, Laws of 1911 as amended (now being R. C. M. 1947, secs. 11-3135 and 11-3136 as amended by Chapter 105, Laws of 1951).

In 1917 the fifteenth state legislative assembly enacted Chapter 152, Laws of 1917, being a *general law* and entitled: "An Act Providing for the Commission-Manager plan of Government for Cities and Towns, Providing for the Election of Officers Therein, Defining Their Duties and Powers and Providing for Their Compensation." These *general laws* so enacted now appear as sections 11-3201 to 11-3285, inclusive, of the Revised Codes of Montana of 1947.

In 1919 the sixteenth state legislative assembly enacted Chapter 44, Laws of 1919, being a *general law* amendatory of certain sections of Chapter 152, Laws of 1917, supra.

*General Laws—Revised Codes of 1921.* Subsequent to the enactment of Chapter 57, Laws of 1911, of Chapter 152, Laws of 1917, and of Chapter 44, Laws of 1919, the *general laws* of the state were again codified and such codification was adopted as the Revised Codes of Montana of 1921, the provisions of Chapter 57, supra, becoming sections 5366 to 5399, inclusive, the provisions of Chapter 152, supra, becoming sections 5400 to 5516, inclusive, and the provisions of Chapter 44, Laws of 1919, becoming sections 5408, 5447, 5496, 5498, 5499, and 5517 to 5520, inclusive, of the Revised Codes of 1921.

In 1923 the eighteenth state legislative assembly enacted Chapter 121, Laws of 1923, being a *general law* entitled: "An Act Authorizing and Providing for the Consolidation and

Merging of the Corporate Existence and Government of any County in the State and of all Cities and Towns Situated Therein Into One Municipal Corporation and Government, Defining the Powers Thereof and Providing a Commission-Manager Plan of Government therefor.'' This Act comprises 121 separately numbered sections. The general laws so enacted are now sections 11-3401 to 11-3460, inclusive, of the Revised Codes of Montana of 1947.

*General Laws—Revised Codes of 1947.* Thus does the *general law,* contained in the Revised Codes of Montana of 1947, provide for four separate forms of city government, viz.: (1) Aldermanic form with a mayor and aldermen elected from each ward, the number of aldermen to be determined by the class and population of the city; (2) commission form with a mayor and councilmen, the number of councilmen to be determined by the class and population of the city; (3) commission-manager form with three or five commissioners empowered to appoint a ''city manager'' and the number of commissioners to be determined by the population of the city, and (4) city and county consolidated form with commissioners, a manager, separate directors of finance, health, law and police, and purchasing agent and such assistants and other subordinates as the commissioners or manager may determine.

In the fall of 1952 certain petitions were filed with the mayor and two city commissioners of the city of Helena seeking to have submitted to the qualified electors of the city the proposition of abandoning the city's organization under the commission form of government, Ch. 31, Title 11, R. C. M. 1947, as amended by Ch. 105, Laws of 1951, and of reorganizing under the commission-manager form of government provided for in Chapters 32 and 33 of Title 11, R. C. M. 1947.

Upon the filing of such petitions the mayor and two city commissioners ordered a special election to be held on Tuesday, November 25, 1952, for the purpose of voting on the above proposition.

On November 15, 1952, the six plaintiffs herein, all citizens,

residents, owners of property and taxpayers of the city of Helena and all qualified electors duly registered for the last general city election held in said city on April 7, 1952, commenced the instant action in this court against the city of Helena, its mayor and its two city commissioners, as defendants, seeking first a temporary restraining order and next a permanent injunction enjoining the holding of the special city election so ordered.

This action is a timely challenge to the validity of such procedure.

Section 1 of Chapter 105, Laws of 1951, provides that the proposition of abandoning the commission form of government and of accepting the provisions of the law applicable to another form of municipal government "shall be placed upon the ballot at the next regular city election".

Plaintiffs contend that the foregoing constitutes the only legal method of submitting the proposition to the voters of the city.

The provisions of Chapter 105, Laws of 1951, control and are determinative of this action,—not the provisions of Chapters 32 and 33 of Title 11, R. C. M. 1947, nor sections 11-3201, 11-3202 or 11-3206 thereof, governing cities operating under the commission-manager form of government. By the same token a city organized and operating under the commission-manager plan seeking to abandon its form of government would be required to proceed under the provisions of Chapter 33 of Title 11, R. C. M. 1947, and particularly those of section 11-3330, —not under the provisions of either section 11-3202, supra, nor of Chapter 105, Laws of 1951.

So long as a city is organized and operating under the commission form of government it must look to and comply with the provisions of the particular statutes providing for and governing such form of government, namely, R. C. M. 1947, secs. 11-3101 to 11-3137, as amended by Chapter 105, Laws of 1951.

It is clear that a city so organized and operating is in no

position to operate under the provisions of the general law applicable to and governing cities organized and operating under any of the other three forms of government until and unless it be legally decided in the manner provided by law to abandon such city's organization under the commission form of government.

Section 1 of Chapter 105, Laws of 1951, in part, provides: "Any city which shall have operated for more than one year under the provisions of this act may abandon such organization hereunder and accept the provisions of the general law of the state then applicable to cities of its population."

This provision contemplates that the city first determine the proposition as to whether it shall abandon its organization under the commission form of government and should the vote thereon be in favor of abandonment then, and in such event only, would it be necessary to decide as to which of the other forms of government then available under the general law of the state, the city should accept. Should the vote be against abandonment the city would then continue its organization and operate under the commission form and thereby be relieved of the necessity of reorganizing under any different plan of government.

The above quoted provisions of section 1 of Chapter 105, Laws of 1951, empower any city which has operated under the commission form of government for more than one year to abandon its organization thereunder by complying with the particular requirements of such Chapter.

Section 1 of Chapter 105, Laws of 1951, also requires that upon petition of not less than ten percent of the electors of the city registered for the last preceding general election, the proposition as to whether the city shall abandon its organization under the commission form of city government *"shall be placed upon the ballot at the next regular city election, provided the petition be filed at least sixty (60) days prior to the date of such election"*.

Thus does the law in plain and simple words require that the proposition of the proposed abandonment of the city's or-

ganization under the commission form of government be submitted to the qualified electors of the city *"at the next regular city election"*.

Section 2 of Chapter 105, Laws of 1951, sets forth what the petition for the submission of the proposition for abandonment must contain to entitle it to be placed upon the ballot for either acceptance or rejection by the voters.

Section 3 of Chapter 105, Laws of 1951, provides that, "All acts and parts of acts in conflict herewith are hereby repealed."

The particular provisions of Chapter 105, Laws of 1951, pages 173 and 174, have specific and exclusive application to cities organized under the provisions of Chapter 31 of Title 11, R. C. M. 1947, secs. 11-3101 to 11-3137, inclusive, as amended by Chapter 105, Laws of 1951, and such latter enactment sets forth the last word of the last legislative assembly on the submission to the voters of the proposition of abandonment of such cities' organization.

R. C. M. 1947, sec. 93-401-16, provides: "In the construction of a statute the intention of the legislature * * * is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."

Thus where a general provision such as R. C. M. 1947, sec. 11-3201, which applies to any municipality, and a particular provision such as section 1 of Chapter 105, Laws of 1951, which applies only to a city which shall have operated for more than one year under the commission form of government, are found to be inconsistent under section 93-401-16, supra, the particular provision of the 1951 Act is paramount to the earlier enacted general Code section 11-3201.

Also section 11-3137 provides that other laws relating to municipal corporations shall be continued in force "except in so far as the same may be in conflict or inconsistent with the provisions of this act" being Chapter 31 of Title 11, R. C. M. 1947.

In other words, in the construction of the particular provisions of the 1951 Act, this court is required to pursue the intention of the legislature and, to the extent of any inconsistency or repugnancy between a general and a particular provision, the particular provision will prevail over the general statute and when the particular provision is later it will be regarded as an exception to or qualification of the earlier enacted general and more comprehensive general provision so that a particular intent will control a general one that is inconsistent with it. R. C. M. 1947, sec. 93-401-16; Reagan v. Boyd, 59 Mont. 453, 197 Pac. 832; State ex rel. Special Road District No. 8 v. Millis, 81 Mont. 86, 261 Pac. 885; Durland v. Prickett, 98 Mont. 399, 39 Pac. (2d) 652; In re Wilson's Estate, 102 Mont. 178, 56 Pac. (2d) 733, 105 A. L. R. 367; In re Kesl's Estate, 117 Mont. 377, 161 Pac. (2d) 641; State v. Holt, 121 Mont. 459, 194 Pac. (2d) 651.

The rule of construction is that "where a provision of the code conflicts with other provisions contained in the same code, that provision which was originally enacted latest in time will operate to repeal an inconsistent prior provision." 1 Sutherland Statutory Construction, 3d Ed., sec. 2019, p. 482. Compare State v. Holt, 121 Mont. 459, 470, 194 Pac. (2d) 651; In re Kesl's Estate, 117 Mont. 377, 385, 161 Pac. (2d) 641.

I am unable to agree with the strained construction which the majority opinion has placed upon the provisions of Chapter 105, Laws of 1951, for "In the construction of a statute * * * the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." R. C. M. 1947, sec. 93-401-15.

Chapter 105, Laws of 1951, says the proposition to be voted upon *"shall be placed upon the ballot at the next regular city election,"* and I view this provision as being both prohibitory as well as mandatory, prohibiting and rendering illegal the

submission and determination of the proposition of abandonment at any election other than *a regular city election*. For these reasons a writ should have issued permanently enjoining the holding of the special election.