[Civ. No. 17137.   First Dist., Div. One.   Apr. 26, 1957.]

ARNIE E. THOMPSON, Appellant, v. CALIFORNIA BREWING COMPANY (a Corporation) et al., Respondents.

470

472

Edward B. Gregg and Henry Gifford Hardy for Appellant.

Eisner & Titchell, Gang, Kopp & Tyre and Lillick, Geary, Wheat, Adams & Charles for Respondents.

WOOD (Fred B.), J.—Plaintiff seeks to recover the reasonable value of a new and novel idea[1] for the advertising and promotion of the sale of beer by the defendant brewing company.

Demurrers to his first amended complaint were sustained without leave to amend and he has appealed. The demurrers challenged the sufficiency of each of the three counts of the complaint and pleaded as to each the bar of subdivision 1 of section 339 of the Code of Civil Procedure.

*The first count is sufficient.* It alleges that at defendants' special instance and request plaintiff disclosed and offered them, orally and in writing, a new and novel idea conceived and devised by him (describing it, as above indicated); that "defendants . . . expressly and orally agreed to pay to plaintiff the reasonable value of such new and novel idea if and when the defendants, or any of them, used the same"; that within two years next preceding the filing of this action defendants and each of them "did . . . use such new and novel idea," describing the use thus made of it;[2]

---

[1]Described in the complaint as "being that the defendant . . . should advertise and sell at least two kinds of beer under two different labels, including 'a man's beer,' and the then present beer of California Brewing Company under its then new label for the feminine and home consumption trade."

[2]Alleging that the defendants "commenced and carried on the advertising and sale of two kinds of beer under two different labels, one of which bore and now bears the trade-mark 'Bulldog Beer' and which was and still is advertised extensively on billboards, in newspapers, on radio, on television and through other advertising media as 'A man's beer' and 'A real man's beer.'"

that by reason of such use defendants became obligated to pay plaintiff $50,000, the reasonable value of such idea; that they have failed and refused to pay and the whole amount is due and owing. Clearly, this is a statement of facts which constitutes a cause of action for the breach of an express oral contract.[3]

*The second count is sufficient.* It pleads the same facts as the first except that it alleges an implied in fact instead of an express contract,[4] and in doing so states a cause of action.

■ Because there is no property interest in abstract ideas (since the 1947 amendment of section 980 of the Civil Code), *quantum valebant* in an "idea" case depends upon a contract implied in fact from the conduct of the parties, not upon a contract implied in law. (*Weitzenkorn* v. *Lesser,* 40 Cal.2d 778, 789, 792-795 [256 P.2d 947]; *Kurlan* v. *Columbia Broadcasting System, Inc.,* 40 Cal.2d 799, 810-811 [256 P.2d 692]; *Desny* v. *Wilder,* 46 Cal.2d 715, 738-739 [299 P.2d 257].)

■ If the distinction between express and implied contracts is only a matter of proof (see *Weitzenkorn* v. *Lesser, supra,* 40 Cal.2d 778 at 794, *Desny* v. *Wilder, supra,* pages 735 and 738 footnote 9), it would seem that the promise to pay could also be proved by conduct. *Desny* v. *Wilder, supra,* apparently holds that in proving the promise by conduct mere acceptance and use of the idea is not enough, but this does not preclude proof of a promise to pay through other

---

[3]Defendants rely upon *Glane* v. *General Mills,* (Cal.App.) 298 P.2d 626), but that case is inapplicable. A letter describing the plaintiff's idea written to a representative of General Mills in 1945, concluded, " 'If you are interested in this idea we would naturally expect to have a conference with you personally on this matter.' " Seven or eight years later General Mills put out a kit essentially like that described in plaintiff's letter. In the plaintiff's brief it was admitted that there was no response from General Mills concerning this matter. The court held that the complaint, supplemented by the admissions, indicated that the dealings of plaintiff and defendant were in the nature of preliminary negotiations and that there was no acceptance by defendant of plaintiff's offer. (The appeal in that case, after the granting of a hearing by the Supreme Court, has been dismissed.)

[4]" '. . . at the special instance and request of defendant, plaintiff submitted to defendants . . . orally and in writing, a new and novel idea . . . , such idea being submitted . . . with the expectation, which was fully and clearly understood by defendants, that plaintiff would be compensated for its use by defendants when and if the defendants should use it. The second count then describes the idea (as in the first count) and avers that subsequently and within two years next preceding the filing of this action defendants used said new and novel idea, describing the use; and that by reason of such use the defendants became obligated to plaintiff for the reasonable value of compensation for such use, said value being $50,000.

474

subsequent acts of the defendants: "From plaintiff's testimony, . . . it does not appear that a contract to pay for conveyance of the abstract photoplay idea had been made, or that the basis for inferring such a contract from subsequent related acts of the defendants had been established, at the time plaintiff disclosed his basic idea to the secretary . . . Certainly the mere fact that the idea had been disclosed under the circumstances shown here would not preclude the finding of an implied (inferred in fact) contract to pay for the synopsis embodying, implementing and adapting the idea for photoplay production." (46 Cal.2d at 739-740.)

Since from the pleadings it does not appear impossible to prove an implied in fact contract, and the necessary allegations for an implied contract appear in the complaint, the complaint sufficiently states a cause of action for breach of an implied in fact contract.

█ *The third count is sufficient.* It pleads a violation of confidence reposed by him in the defendants.[5] The letter by which he transmitted this idea to the defendants (annexed to the complaint as an exhibit) does not of itself indicate any element of confidence in their relationship. Upon the other hand, nothing said in this letter necessarily negatives there having been an understanding between the parties of such a nature that when thus transmitted this new and novel idea was submitted to them "in confidence" and accepted by them "in confidence and upon the understanding that they would not use the idea without the consent of plaintiff" as alleged in the body of the complaint. Upon demurrer these allegations are accepted as true. Whether the evidence that might be adduced would support them is a question of fact to be decided when adduced, not upon the hearing of a demurrer. That is the main distinction between this case and *Taylor* v. *Kelly,* 103 Cal. 178 [37 P. 216], and *Ruhl* v. *Mott,* 120 Cal. 668 [53 P. 304], heavily relied upon by defendants. The Kelly and the Ruhl cases came to the Supreme Court after trial and judgment. █ Quite significant

---

[5]He alleges substantially the same facts as those pleaded in the second count except that he avers that he submitted this new and novel idea to defendants "in confidence"; that they accepted it "in confidence and upon the understanding that they would not use the idea without the consent of plaintiff. But, notwithstanding such confidence and understanding, the defendants have . . . without plaintiff's consent, and in violation of such confidence, commenced and continued the employment of such idea. . . ."

And that plaintiff "by reason of such unlicensed use by defendant of his idea . . . suffered damage in the amount of $50,000 . . ."

is the statement in the Ruhl case that the fact that plaintiff "reposed confidence in the defendant did not cast any duty upon the latter, unless he 'voluntarily assumed a relation of personal confidence' with plaintiff, and this is not found." (P. 679 of 120 Cal.) Here, plaintiff has alleged the voluntary assumption of such a relationship by the defendants. Why might they not have assumed such a relationship? If the evidence should show they were looking for "ideas" and that plaintiff undertook to supply several such upon the condition that they be not disclosed or used without his consent, why should there not ensue a duty to that effect?

This is, we think, a good deal like some aspects of the law relating to trade secrets as expressed in the Restatement of the Law of Torts, section 757: "One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if . . . (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him . . ."

Comment *j* on section 757 points up the distinction between breach of contract and breach of confidence: "A breach of confidence under the rule stated in this Clause may also be a breach of contract which subjects the actor to liability under the rules stated in the Restatement of Contracts. But whether or not there is a breach of contract, the rule stated in this Section subjects the actor to liability if his disclosure or use of another's trade secret is a breach of the confidence reposed in him by the other in disclosing the secret to him." (4 Rest., Law of Torts, p. 13.)

This element of confidence is not necessarily limited to the type of case in which there is a fiduciary relationship (such as that between partners or joint venturers or employer and employee) between the parties. Other circumstances may create a duty not to disclose or use without the consent of the originator of the "idea." This is well expressed in Comment *j* on section 757: "The chief example of a confidential relationship under this rule is the relationship of principal and agent (see Rest., Agency, §§ 395 and 396). Such is also the relationship between partners or other joint adventurers. But this confidence may exist also in other situations. For example, A has a trade secret which he wishes to sell with or without his business. B is a prospective purchaser. In the course of negotiations, A discloses the secret to B solely for the purpose of enabling him to appraise

its value. Or, A requests a loan from B, a banker, for the purpose of aiding the manufacture of a product by A's secret process. In order to assure B about the soundness of the loan, A discloses the secret to him in confidence. In both cases B is under a duty not to disclose the secret or use it adversely to A. Again, this confidence may exist even when no business relation between A and B exists or is contemplated, as when A comes to B, his former teacher, for free advice which B is willing to give with respect to the secret and discloses the secret to him in confidence. But in all these cases A cannot impose a confidence on B without B's consent. If A discloses the secret to B despite B's protest that he does not wish to hold it in confidence and will not so hold it if it is disclosed, the confidence requisite for liability under the rule stated in Clause (b) does not arise. Likewise, the confidence does not arise if B has no notice of the confidential character of the disclosure. But no particular form of notice is required. The question is simply whether in the circumstances B knows or should know that the information is A's trade secret and that its disclosure is made in confidence.'' (4 Rest., Law of Torts, pp. 13-14.)

Comment *b* on section 757 indicates that under appropriate circumstances these principles apply to information which is not a trade secret: ''Although given information is not a trade secret, one who receives the information in a confidential relation or discovers it by improper means may be under some duty not to disclose or use that information. Because of the confidential relation or the impropriety of the means of discovery, he may be compelled to go to other sources for the information. As stated in Comment *a,* even the rule stated in this Section rests not upon a view of trade secrets as physical objects of property but rather upon abuse of confidence or impropriety in learning the secret. Such abuse or impropriety may exist also where the information is not a trade secret and may be equally a basis for liability.'' (4 Rest., Law of Torts, pp. 7-8.)

We conclude that the third count is not vulnerable to a general demurrer.

*The statute of limitations* came into the picture through certain additions to the complaint which the trial court made upon motion of the defendants pursuant to the provisions of section 426, subdivision 3, of the Code of Civil Procedure.[6]

[6]In compliance with that section plaintiff had attached to the complaint a copy of his letter to the defendant brewing company in which

The court first made an order "for a view of the production not attached," and later an order making copies of certain newspaper advertisements a part of the complaint. In these advertisements the defendant brewing company made some use of the "idea" described in plaintiff's complaint. These advertisements appeared in editions published during a period of about six weeks immediately preceding two years prior to the filing of the complaint.

Thus it appears from the complaint that defendants made use of the "idea" more than two years prior to the filing of the complaint and that the action is barred by section 339, subdivision 1, of the Code of Civil Procedure unless, as plaintiff claims, the running of the advertisements mentioned did not in fact constitute a "use" of the "idea" within the meaning of the contract.

Clearly this two-year statute applies to the first two counts of the complaint, each of which pleads a contract not founded upon an instrument in writing. The obligations arose when defendants first began to use the "idea." Defendants agreed to pay the reasonable value of the idea "if and when the defendants . . . used the same," as stated in the first count. It was understood by the parties that plaintiff would be compensated for its use (its reasonable value, $50,000) "when and if the defendants should use it," as stated in the second count.

Section 339, subdivision 1, applies also to the third count. (See *Italiani* v. *Metro-Goldwyn-Mayer Corp.*, 45 Cal. App.2d 464, 467 [114 P.2d 370], for an analysis of this section in its relation to torts and other actions not specifically mentioned in other portions of the statute of limitations. Compare *Bendien* v. *Solov*, 89 Cal.App.2d 904, 907-908 [202 P.2d 372], oral agreement whereby plaintiffs furnished money for purchase and rehabilitation of certain land upon the undertaking that they would be repaid upon sale of the land; two-year statute applied.) We find alleged in the third count no elements of fraud such as would bring it within the purview of section 338, subdivision 4, of the Code of Civil Procedure.

Plaintiff contends that section 426, subdivision 3, does not apply, upon the theory that the "idea" involved is not an "intellectual production." We see no merit in this point.

---

he described the "idea," to serve "as a copy of the production as to which the infringement is claimed." He attached no copy of "the alleged infringing production," claiming it would not be possible or feasible to do so.

478

■ He also claims that the view ordered by the court can not furnish a basis for raising the question of the bar of the statute of limitations. He is mistaken. Section 426 declares that the view may be ordered ''to the end that the contents of such production may be deemed to be a part of the complaint *to the same extent and with the same force as though such production* had been capable of being and *had been attached to the complaint.*'' (Emphasis added.) We think it becomes a part of the complaint for all purposes. (See *Weitzenkorn* v. *Lesser, supra,* 40 Cal.2d 778, 785-786.)

■ However, plaintiff contends that the advertising which the court viewed was merely ''test'' advertising which the defendants conducted for the purpose of ascertaining whether the ''idea'' was suitable to their needs and uses; that the actual use by them did not commence until later and within the two-year period prescribed by section 339, subdivision 1. In short, he claims that no real breach occurred during such test advertising, not until after the test had been made and defendants had decided to and did adopt it as a part of their merchandising and advertising policy and practice. The advertisements themselves, naturally, do not show these facts, if facts they are. This claim of plaintiff has possibilities except as to the third count, the breach of confidence count. Test advertising to the extent of displays appearing in one Sacramento newspaper on eleven different days between June 6 and July 31, 1952, and in one San Diego newspaper on the 19th and 26th of June of that year (as shown by the documents annexed to the complaint by order of the trial court) appears to us to be quite as complete a breach of ''confidence'' as would a more extended period of advertising. It, therefore, does not appear that plaintiff can amend the third count to show that the statute has not run. Accordingly, we hold that the court correctly sustained the bar of the statute of limitations to the third count without leave to amend.

The order which directed that the copies of the newspaper advertisements mentioned be made a part of the complaint is the same order which sustained the demurrers without leave to amend. ■ *Plaintiff has not had an opportunity to plead facts which, if they exist, negative the seeming bar of the statute as to the first and second counts.* He should be given such an opportunity by granting permission to further amend the first and second counts but not the third count of his complaint, if he be advised so to do.

We need not consider plaintiff's criticism of certain items of the costs assessed against him, for they fall with the judgment, which must be reversed.

The judgment is reversed with directions that plaintiff be permitted to amend the first and second counts of his complaint if he be so advised.

Peters, P. J., and Bray, J., concurred.