[L.A. No. 30245. In Bank. June 3, 1975.]

ELIZABETH S. DAVIES, as Executrix, etc.,
Plaintiff and Appellant, v.
NORMAN KRASNA, Defendant and Respondent.

**COUNSEL**

Max Fink and R. Stephen Duke for Plaintiff and Appellant.

Mitchell, Silberberg & Knupp, Arthur Groman and Russell J. Frackman for Defendant and Respondent.

**OPINION**

**TOBRINER, J.**—Plaintiff, executrix of the estate of Valentine Davies, appeals from a trial court determination that her action for breach of confidence is barred by the statute of limitations. The parties stipulated for purpose of the limitation issue that in 1951 Valentine Davies submitted his written story "Love Must Go On" to defendant in confidence and that defendant incorporated the idea, central theme, and dramatic core of that story into his successful play "Who Was That Lady I Saw You With," first produced in 1958. The trial court found that in 1954 and thereafter defendant disclosed the story to various persons in the entertainment industry in violation of Davies' confidence, and that Davies learned of these disclosures sometime before November 11,

1955.[1] The trial court concluded that the instant suit, filed November 19, 1959, was barred by the statute of limitations.

As we shall explain, this court has never ruled that a cause of action for breach of confidence can rest upon a basis other than a contract that protects that confidence. Assuming the viability of such a cause of action in the present litigation—an assumption compelled here by the law of the case—we conclude that the trial court correctly determined that the two-year period of Code of Civil Procedure section 339, subdivision 1, bars this cause of action.

We shall point out why we reject plaintiff's contention that the statute of limitations should not begin to run until 1958 when defendant profited from the exploitation of Davies' idea. We shall explain that Davies had already suffered actual and appreciable damage from defendant's breach before November 11, 1955. Neither Davies' difficulty in proving the extent of damage, nor the absence of profits upon which he could impose a constructive trust, delays the running of the period of limitations. Because plaintiff's suit was not filed within two years after November 11, 1955, it is barred by the statute of limitations.

The legal proceedings which followed the filing of plaintiff's first complaint in 1959 doubtless deserve a place in the annals of protracted and maddeningly inefficient litigation not far removed from that of Charles Dickens' *Jarndyce* v. *Jarndyce*. Plaintiff's first complaint asserted two causes of action: breach of contract and breach of confidence. Valentine Davies died before trial, and plaintiff pursued the litigation as the executrix of the estate. At trial, in 1962, the court dismissed the breach of confidence claim for insufficient evidence. It submitted the breach of contract cause to the jurors, but the jurors failed to reach a verdict.

A second trial the following year focused solely on plaintiff's contract claim. The jurors rendered a defense verdict. The Court of Appeal subsequently affirmed the defense verdict on the contract issue but reversed that part of the judgment that granted a nonsuit as to the cause for breach of confidence. The appellate court remanded this issue for a possible third trial. (*Davies* v. *Krasna* (1966) 245 Cal.App.2d 535 [54 Cal.Rptr. 37] [hereinafter *Davies I*].) We denied a petition for hearing.

---

[1]Plaintiff asserts that certain findings are not supported by the evidence, but her quarrel, upon closer analysis, is not with the factual findings but with the legal conclusion the trial court derived from those findings.

Defendant then obtained leave from the trial court to file an amended answer to assert the defenses of res judicata and estoppel. Concluding that the defense verdict respecting plaintiff's contract claim resolved all fact issues relevant to the breach of confidence claim, the trial judge granted defendant's motion for judgment on the pleadings. The Court of Appeal reversed (*Davies* v. *Krasna* (1970) 12 Cal.App.3d 1049 [91 Cal.Rptr. 250] [hereinafter *Davies II*]), and we denied a second petition for hearing.

Undaunted, defendant obtained leave to file still another amended answer, this one for the purpose of asserting the statute of limitations.[2] Following a 1972 proceeding devoted solely to resolving the limitations issue (see Code Civ. Proc., § 597), the trial court held that the two-year limitations period prescribed in Code of Civil Procedure section 339, subdivision 1, barred plaintiff's breach of confidence claim.

Plaintiff once again seeks appellate relief. She argues that her action is one for constructive fraud and thus not governed by the limitations period of section 339, subdivision 1; in any event, she contends, Davies' cause of action did not arise until 1958 when defendant and others transformed Davies' story into a Broadway production and first reaped monetary rewards. Defendant, on the other hand, urges that the limitations period began to run no later than November 11, 1955, by which date Valentine Davies had learned of the alleged breach of confidence.

Logically, before determining the applicable statute of limitations, we should decide whether a cause of action lies against one who discloses an idea given him in confidence when such action does not rest upon contract expressed or implied in fact. The court has never resolved that issue.[3] Our latitude in this case, however, is substantially constrained by

---

[2] Plaintiff does not claim that the trial court abused its discretion by permitting defendant to amend his answer this late in the proceedings.

[3] Besides *Davies I* and *II*, several Courts of Appeal have recognized or mentioned liability similar to that claimed by plaintiff: *Carpenter Foundation* v. *Oakes* (1972) 26 Cal.App.3d 784, 792, 797 [103 Cal.Rptr. 368]; *Donahue* v. *Ziv Television Programs, Inc.* (1966) 245 Cal.App.2d 593, 607 [54 Cal.Rptr. 130]; *Ojala* v. *Bohlin* (1960) 178 Cal.App.2d 292, 299-300 [2 Cal.Rptr. 919]; *Thompson* v. *California Brewing Co.* (1957) 150 Cal.App.2d 469, 474-476 [310 P.2d 436]. Other decisions, however, suggest that California law will protect an idea only if converted into a form protectible by California copyright or made the subject of a contract limiting its exploitation. (*Desny* v. *Wilder* (1956) 46 Cal.2d 715, 741, 744 [299 .2d 257]; *Weitzenkorn* v. *Lesser* (1953) 40 Cal.2d 778, 794-795 [256 P.2d 947]; *Blaustein* v. *Burton* (1970) 9 Cal.App.3d 161, 177 [88 Cal.Rptr. 319]; *Minniear* v. *Tors* (1968) 266 Cal.App.2d 495, 502 [72 Cal.Rptr. 287]; cf. Civ. Code,

the law of the case, indeed doubly so, since plaintiff obtained two favorable appellate decisions. These decisions held that California recognizes a cause of action for breach of confidence, and that plaintiff had presented sufficient evidence at the 1962 trial to reach the jury on that cause of action.

We are asked, therefore, to resolve a statute of limitations issue with respect to a theory of liability never acknowledged or rejected by this court. Under normal circumstances, our first step would be to explore whether California law should recognize such liability. If we were to reject plaintiff's theory of action, however, we would violate the rule that a matter adjudicated on a prior appeal normally will not be relitigated on a subsequent appeal in the same case.[4] (*People* v. *Shuey* (1975) 13 Cal.3d 835, 841-842 [120 Cal.Rptr. 83, 533 P.2d 211]; *People* v. *Durbin* (1966) 64 Cal.2d 474, 477 [50 Cal.Rptr. 657, 413 P.2d 433]; *Steelduct Co.* v. *Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 642 [160 P.2d 804]; *Allen* v. *California Mutual B. & L. Assn.* (1943) 22 Cal.2d 474, 481 [139 P.2d 321].) Application of that rule is particularly appropriate in the present case, since *two* prior appellate decisions have resolved the issue as between these parties.[5]

On the other hand, were we to declare that California law does recognize liability for breaches of artistic confidences, we would slight whatever interests cut against our declaring such liability, since the

§ 980, subd. (a); *International News Service* v. *Associated Press* (1918) 248 U.S. 215 [63 L.Ed. 211, 39 S.Ct. 68, 2 A.L.R. 293].) Plaintiff in the present case does not allege copyright infringement, and has already lost her contract action.

[4]The rule applies even though the subsequent appeal comes before this court whereas the prior appeals were before Courts of Appeal. "Where a decision upon appeal has been rendered by a District Court of Appeal and the case is returned upon a reversal, and a second appeal comes to this court directly or intermediately, for reasons of policy and convenience, this court generally will not inquire into the merits of said first decision, but will regard it as the law of the case." (*United Dredging Co.* v. *Industrial Acc. Com.* (1930) 208 Cal. 705, 712 [284 P. 922]; see also 6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4553-4554.) Concededly, the party that lost the first Court of Appeal decision in *United Dredging* did not petition this court for a hearing, whereas defendant in the present case petitioned this court for hearings after both adverse Court of Appeal decisions. We do not, however, believe that this distinction dictates a different result than that reached in *United Dredging*.

[5]Because *Davies II* considered *Davies I* to be law of the case, one indeed can say that the law of the case is the law of this case.

The doctrine of law of the case of course is not inflexible. (*England* v. *Hospital of Good Samaritan* (1939) 14 Cal.2d 791, 795 [97 P.2d 813].) The principal ground for ignoring the doctrine, however, is an intervening or contemporaneous change in the law (see *Ryan* v. *Mike-Ron Corp.* (1968) 259 Cal.App.2d 91, 96-97 [66 Cal.Rptr. 224]; 6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4568-4570), a circumstance not present in the instant case.

parties not surprisingly have foregone the presentation of arguments on the issue. We believe it unwise to create a new genre of liability without full argumentation on the question. Instead, we choose the admittedly intellectually unsatisfying course of resolving a statute of limitations issue with respect to a theory of liability not yet part of the fabric of this court's law.

Following the law of the case, we assume that plaintiff has stated a valid cause of action for breach of confidence. (*Davies I,* 245 Cal.App.2d at p. 550.) When defendant received Valentine Davies' idea, with the understanding that this idea was confidential, defendant incurred an obligation not to use or disclose that idea without the creator's consent. (*Davies I,* 245 Cal.App.2d at p. 549.) The obligation thus incurred lies not in the contractual language but is imposed by law (*Davies II,* 12 Cal.App.3d at p. 1054); an action for its breach lies either in quasi-contract or in tort (see *Thompson* v. *California Brewing Co.* (1961) 191 Cal.App.2d 506, 508 [12 Cal.Rptr. 783]).

 We turn now to the question whether plaintiff's cause of action as so described is barred by the statute of limitations of Code of Civil Procedure section 339, subdivision 1. That statute provides a two-year limitation period for "An action upon a contract, obligation or liability not founded upon an instrument of writing . . . ." Reasoning that plaintiff's complaint asserted an action upon an obligation not founded on an instrument of writing, and was filed more than two years after the breach of that obligation, the trial court held the suit barred by section 339, subdivision 1.

Plaintiff contends, however, that her suit should be classified as one for constructive fraud (see Civ. Code, § 1573) based upon breach of a duty arising from a confidential relationship, and is thus governed by Code of Civil Procedure section 338, subdivision 4, which provides a three-year period from discovery of the fraud. Although the trial court findings suggest that plaintiff's suit was untimely even under the more liberal provisions of that section, defendant pleaded only the two-year period of section 339, subdivision 1, as a bar to the complaint. An answer which cites only an inapplicable statute of limitations cannot raise an issue as to the timeliness of a complaint (see Code Civ. Proc., § 458; *Davenport* v. *Stratton* (1944) 24 Cal.2d 232, 247 [149 P.2d 4]; *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 375 [28 Cal.Rptr. 357]; *DeCelle* v. *City of Alameda* (1963) 221 Cal.App.2d 528, 533 [34 Cal.Rptr. 597]). We must therefore determine whether a cause of action for

breach of confidence is governed by the limitations period of section 339, subdivision 1, as the trial court concluded, or by section 338, subdivision 4.

The only two cases to consider this issue have applied the two-year limitation of section 339, subdivision 1. In *Thompson* v. *California Brewing Co.* (1957) 150 Cal.App.2d 469 [310 P.2d 436], plaintiff submitted an idea for the advertising of beer to defendant, who used that idea without compensating plaintiff. Plaintiff sued on three counts, an express oral contract, an implied in fact contract, and breach of confidence. After holding that the contract counts fell under the two-year limitation, the court went on to hold that "Section 339, subdivision 1, applies also to the third count. . . . We find alleged in the third count no element of fraud such as would bring it within the purview of section 338, subdivision 4, of the Code of Civil Procedure." (150 Cal.App.2d at p. 477.) Since defendant in *Thompson* first used plaintiff's idea more than two years before plaintiff filed suit, the court held his action for breach of confidence barred by limitations. (150 Cal.App.2d at p. 478.)

In *Monolith Portland Midwest Co.* v. *Kaiser Aluminum & C. Corp.* (9th Cir. 1969) 407 F.2d 288, a Ninth Circuit decision applying California law, plaintiff alleged that its employee invented an improved technique of lining kilns. In the course of supplying metal plates used in kilns, defendant consulted with plaintiff on technical matters, and through those discussions learned of plaintiff's innovation. Defendant later revealed that innovation to plaintiff's competitors, and plaintiff sued for breach of confidence. The District Court had found that " 'no conduct of the defendants . . . toward plaintiff was shown to constitute any variety of fraud' " (407 F.2d at p. 293, fn. 4), and on appeal the parties agreed that the case was governed by section 339, subdivision 1. Rejecting plaintiff's contention that defendant's violation was a continuing tort, the court held the action barred: "The cause of action arises but once, and recovery for the wrong is barred within two years thereafter unless the statute has been effectively tolled." (407 F.2d at p. 293.)

Plaintiff offers no plausible grounds for distinguishing *Thompson* or *Monolith.*[6] She contends, however, that those precedents were wrongly

---

[6]Plaintiff argues that the defendant's obligation of confidence in *Thompson* and *Monolith* was based upon an implied in fact contract, but that her suit is based upon quasi-contract. This argument misreads *Thompson,* in which the plaintiff asserted independent causes of action for breach of contract and breach of confidence, and the court construed the action for breach of confidence as lying in tort. (*Thompson* v. *California Brewing Co., supra,* 150 Cal.App.2d at pp. 474-475; see *Thompson* v. *California*

decided. Her argument is that a breach of a duty arising from a confidential relationship constitutes constructive fraud (*Day* v. *Greene* (1963) 59 Cal.2d 404, 411 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802]; see Civ. Code, § 1573), and thus falls under the limitation of section 338, subdivision 4, which governs actions "for relief on the ground of fraud or mistake."

Plaintiff's argument confuses a cause of action for breach of confidence with a cause of action for violation of a duty arising from a confidential relationship. "A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. A confidential relation may exist although there is no fiduciary relation; it is particularly likely to exist where there is a family relationship or one of friendship or such a relation of confidence as that which arises between physician and patient or priest and penitent." (Rest. 2d Trusts, § 2, com. b, quoted in *Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 337-338 [15 Cal.Rptr. 71, 364 P.2d 247] and *Goldberg* v. *Goldberg* (1963) 217 Cal.App.2d 623, 629-630 [32 Cal.Rptr. 93].) An action for breach of confidence, on the other hand, arises whenever an idea, offered and received in confidence, is later disclosed without permission. (See *ante*, at p. 508.)

The creator of the idea may transmit the idea in the protective context of a confidential relationship, as, for example, when an inventor reveals his concept to a patent lawyer (cf. *Stevens* v. *Marco* (1956) 147 Cal.App.2d 357 [305 P.2d 669]). But ideas may also be transmitted in the course of arms length negotiations between businessmen who can profit from its exploitation. (E.g., *Blaustein* v. *Burton* (1970) 9 Cal.App.3d 161 [88 Cal.Rptr. 319]; *Thompson* v. *California Brewing Co., supra,* 150 Cal.App.2d 469; see examples in Rest., Torts, § 757, com. j.) The point is that the existence of a confidential relationship is not essential to a cause of action for violation of confidence; in the absence of an acceptance of trust, which is the essence of a confidential relationship (*Vai* v. *Bank of America, supra,* 56 Cal.2d 329, 338), a violation of confidence does not create a cause of action in constructive fraud (see *Crocker-Anglo Nat. Bank* v. *Kuchman* (1964) 224 Cal.App.2d 490, 494 [36 Cal.Rptr. 806]).

---

*Brewing Co.* (1961) 191 Cal.App.2d 506, 508 [12 Cal.Rptr. 783].) In any event, the period of limitation of section 339, subdivision 1, governs not only actions for breach of oral or implied contracts, but also both quasi-contractual actions and those torts actions, including any tort of violation of confidence, which do not fall within the scope of other statutes of limitation. (See *Italiani* v. *Metro-Goldwyn-Mayer Corp.* (1941) 45 Cal.App.2d 464, 467 [114 P.2d 370]; 2 Witkin, Cal. Procedure (2d ed. 1970) pp. 1171-1172.)

In the present case, plaintiff alleges in her amended complaint the existence of a confidential relationship, but her conclusionary allegations, unsupported by factual averments, are insufficient to give rise to a triable issue. (See *Odorizzi* v. *Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 129 [54 Cal.Rptr. 533]; 3 Witkin, Cal. Procedure (2d ed. 1971) pp. 1947-1948.) Apart from such allegations, nothing in the record of this case or the arguments of the parties supports the existence of a confidential relationship. Defendant was not Valentine Davies' trusted friend or advisor; he was a prospective purchaser or exploiter of Davies' idea, and the transaction took place between men engaged in the business of selling and exploiting ideas for movies. The circumstances of that transaction may impose upon defendant a duty to refrain from unauthorized disclosure of the idea, but they are insufficient to impose upon him the fiduciary-like duties that arise from a confidential relationship.

Since plaintiff's cause of action for breach of confidence does not rest upon a confidential relationship it cannot be classed as an action for constructive fraud. Following the earlier decisions of *Thompson* v. *California Brewing Co., supra,* 150 Cal.App.2d 469 and *Monolith Portland Midwest Co.* v. *Kaiser Aluminum & C. Corp., supra,* 407 F.2d 288, we conclude that plaintiff's action is governed by the two-year period of section 339, subdivision 1.

Defendant, to Davies' knowledge, had breached his duty of confidence before November 11, 1955; if the period of limitation commenced on or before that date, plaintiff's action does not overcome the bar of limitations. Plaintiff contends, therefore, that the cause of action did not accrue until 1958 when defendant used Davies' idea to produce a profitable Broadway play. She advances three arguments: (1) that Davies' cause of action for breach of confidence did not arise until defendant publicly exhibited Davies' idea; (2) that the cause of action did not arise until Davies had an *effective* remedy, which condition, she asserts, first obtained in 1958; and (3) that the cause of action, to the extent it seeks to impose a constructive trust, did not arise until defendant by profiting from Davies' idea created a trust *res.* We shall discuss each argument in turn.

Plaintiff's first argument, that Davies' cause of action did not arise until defendant publicly exhibited Davies' idea in 1958, confuses two different theories of action. A suit for breach of an implied contract not to exploit an idea without paying for it does arise only with the sale or

exploitation of the idea. (*Donahue* v. *United Artists Corp.* (1969) 2 Cal.App.3d 794 [83 Cal.Rptr. 131].) Plaintiff's cause of action for breach of implied contract, however, was resolved in defendant's favor by jury verdict. (See *Davies I, supra,* 245 Cal.App.2d 535.) Her present cause of action for breach of confidence arises upon defendant's unauthorized disclosure of the confidential idea. (*Thompson* v. *California Brewing Co., supra,* 150 Cal.App.2d 469, 478.) The first unauthorized disclosure in breach of confidence occurred before November 11, 1955; thus the statute of limitations on plaintiff's cause of action for breach of confidence began to run not later than that date.[7]

Plaintiff secondly argues that Davies lacked an effective remedy for defendant's breach of confidence until 1958. A 1955 action for injunctive relief, she maintains, would have been futile since defendant had already disclosed Davies' idea; an action for damages would have resulted in merely nominal recovery. Only when defendant, by producing a profitable play in 1958, demonstrated the true value of Davies' idea, did Davies have an effective remedy.

Plaintiff's contention that a period of limitation should not begin to run until the injured party possesses an effective remedy raises issues which turn upon the practical purpose that a statute of limitations serves in our legal system. The fundamental purpose of such statutes is to protect potential defendants by affording them an opportunity to gather evidence while facts are still fresh. (*Elkins* v. *Derby* (1974) 12 Cal.3d 410, 417 [115 Cal.Rptr. 641, 525 P.2d 81]; *Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 229 [153 P.2d 325]; *Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342, 348-349 [88 L.Ed. 788, 792-793, 64 S.Ct. 582].) Modern adjustments in limitations law, however, have reflected concern for the practical needs of prospective plaintiffs. Our law has evolved, for example, to a point where the limitations clock only begins to run on certain causes of action when the injured party discovers or should have discovered the facts supporting liability. (See, e.g., *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 186-190

---

[7]Noting that *Thompson* v. *California Brewing Co., supra,* 150 Cal.App.2d 469, involved a public disclosure, plaintiff asserts that only such public disclosure gives rise to a cause of action for breach of confidence. But many ideas are confidential not only as against disclosure to the general public, but also against disclosure to competitors, prospective purchasers, and others working in the field of endeavor in which that idea has value. (E.g., *Monolith Portland Midwest Co.* v. *Kaiser Aluminum & C. Corp.* (9th Cir. 1969) 407 F.2d 288.) The relevant market for Davies' idea was not the general public, but producers of movies and plays, and if, as the trial court found, defendant's disclosure destroyed the saleability of Davies' idea within that market, surely Davies need not await future public disclosure before bringing suit.

[98 Cal.Rptr. 837, 491 P.2d 421] and cases there cited; *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302 [57 P.2d 908]; *Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564 [80 Cal.Rptr. 130]; Code Civ. Proc., § 340.5; 2 Witkin, Cal. Procedure (2d ed. 1971) pp. 1118-1119 and statutes cited therein.)

Impelled by this concern for the pragmatic, we have drifted away from the view held by some that a limitations period necessarily begins when an act or omission of defendant constitutes a legal wrong as a matter of substantive law. (See generally *Developments in the Law—Statutes of Limitations* (1950) 63 Harv.L.Rev. 1177.) Rather, we generally now subscribe to the view that the period cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages.

Thus in *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433], we held that the limitations period on plaintiff's legal malpractice action did not begin until plaintiff had suffered "appreciable harm." (*Id.* at p. 200.) "The mere breach of . . . duty," we said, "causing only nominal damages, speculative harm, or the threat of future harm—not yet realized" normally "does not suffice to create a cause of action . . . ." (*Id.;* see also *Miller* v. *Bean* (1948) 87 Cal.App.2d 186, 189 [196 P.2d 596].)

Particularly illustrative in this regard is *Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513 [6 Cal.Rptr. 924], which involved an insurance broker who carelessly procured a $15,000 liability policy after his client requested a $50,000 policy. The insured subsequently incurred a personal injury judgment in excess of $15,000, and a Court of Appeal held that the limitations period on the insured's assignee's negligence action against the broker had commenced when the judgment was entered, not when the broker procured the wrong policy. The court stated that "It is clear that mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable. Of course, it is uncertainty as to the fact of damage, rather than its amount, which negatives the existence of a cause of action. In the case at bar, the fact of any damage at all was completely uncertain until judgment in the personal injury action." (183 Cal.App.2d. at p. 517.) (Citations omitted.) Rejecting the contention that plaintiff could have sued for nominal damages when he discovered the inadequacy of the coverage, the court stated that "an action for mere nominal damages

would have been at best illusory, and cannot be held to start the running of the statute of limitations." *(Ibid.)*

■ We conclude from the above decisions that although a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period. Under present authority, neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations.[8]

■ In the case at bar, the trial court expressly found that the "disclosure of [Valentine Davies'] story . . . in 1954 by defendant Krasna to the market . . . substantially destroyed the marketability of [the] story." This finding impels the conclusion that, by the time Davies learned of the unauthorized disclosures, he had incurred actual and appreciable .damage sufficient to start the running of the period of limitation. Plaintiff responds that at the time of discovery the actual damages were too speculative to justify an award, but as we have observed (see cases cited fn. 8, *supra*), once plaintiff has suffered actual and appreciable harm, neither the speculative nor uncertain character of damages nor the difficulty of proof will toll the period of limitation.

Davies, moreover, could have included in a 1955 action for actual damages a prayer for injunctive relief to bar defendant from further unauthorized disclosure or use of Davies' story.[9] Such an action would have enabled him to cover all fronts—to collect for past damage and demonstrable prospective damage, and to minimize the likelihood that defendant would later act in ways likely to increase damages.

---

[8]See *Budd* v. *Nixen, supra; Merchant's Fire Assur. Corp.* v. *Retail Credit Co., Inc.* (1962) 206 Cal.App.2d 55, 59 [23 Cal.Rptr. 544]; *Walker* v. *Pacific Indemnity Co., supra; Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771 [247 P.2d 133]; cf. *Milton* v. *Hudson Sales Corp.* (1957) 152 Cal.App.2d 418, 434 [313 P.2d 936] and *Allen* v. *Gardner* (1954) 126 Cal.App.2d 335, 340 [272 P.2d 99] (both holding that uncertainty as to damages is not fatal to a cause of action, but not in the context of a defense of limitations.)

[9]Plaintiff asserts that an injunction running against defendant would not have afforded Valentine Davies effective relief since it would have failed to prevent third party disclosees from exploiting his creation; she further asserts the impracticability of joining disclosees as defendants in order to close this loophole. Whatever the merits of this argument, it fails when considered in conjunction with the fact that plaintiff prays for damages reflective of the profits *earned only by defendant,* a prayer, incidentally, which arguably is inconsistent with her claim of injury by virtue of a breach of confidence. By pleading as she has, plaintiff has indicated that she would be fully satisfied were she awarded the profits realized only by defendant. Given the bounds of her prayer, we presume Valentine Davies would have been similarly satisfied with an injunction commanding defendant to refrain from taking the steps which earned him those profits.

To delay the running of the period of limitation until defendant's acts furnished plaintiff with a more certain proof of damages would contravene the principle that victims of legal wrong should make reasonable efforts to avoid incurring further damage. (See *Valencia* v. *Shell Oil Co.* (1944) 23 Cal.2d 840, 844 [147 P.2d 558]; *Schultz* v. *Town of Lakeport* (1936) 5 Cal.2d 377, 383 [54 P.2d 1110, 55 P.2d 485, 108 A.L.R. 1168]; *Hunter* v. *Croysdill* (1959) 169 Cal.App.2d 307, 318 [337 P.2d 174]; *Commodity Credit Corp.* v. *Rosenberg Bros. & Co.* (9th Cir. 1957) 243 F.2d 504, 511, cert. den., 355 U.S. 837 [2 L.Ed.2d 48, 78 S.Ct. 62].) Concededly, this principle does not require injured parties to take expensive and burdensome steps to minimize their losses (see, e.g., *Guerrieri* v. *Severini* (1958) 51 Cal.2d 12, 23 [330 P.2d 635]), and certainly legal action is not typical of the kinds of behavior which courts expect of such victims. (Cf. *Lally* v. *Kuster* (1918) 177 Cal. 783, 791 [171 P. 961].) If convinced that his story had serious profit potential, however, Valentine Davies should have acted promptly when he learned that defendant had injured Davies' ability to market his story. He cannot be permitted to rest on his rights, shifting to defendant the risk and expense attendant upon commercial exploitation of his idea, and then assert his claim only when that exploitation had yielded a net profit.

We fear that plaintiff's interpretation of the statute of limitations would impair the safeguards it imposes in cases involving unliquidated damages. As Justice Allport pointed out in his dissenting opinion in the Court of Appeal, "The argument [advanced by plaintiff] would be available in all such actions that the applicable statute is tolled for an indefinite time simply because the nature and extent of the damage was not determined or readily provable within the otherwise applicable statutory period of limitation." We conclude that the statutory period commenced once Davies suffered actual and appreciable damage, and thus no later than November 11, 1955.

Plaintiff thirdly and finally asserts that, for want of a res, the remedy of constructive trust was not available to Davies until 1958; she maintains that consequently the period of limitation on that remedy should not begin to run until 1958. ■ This argument overlooks the principle that "The statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded." (*Day* v. *Greene, supra,* 59 Cal.2d 404, 411.) ■ Since "A constructive trust is not a substantive device but merely a *remedy* to compel a person not justly entitled to *property* to transfer it to another who is entitled thereto" (2 Witkin, Cal. Procedure (2d ed. 1970) p. 1193),

an action seeking to establish a constructive trust is subject to the limitation period of the underlying substantive right. (See *Day* v. *Greene, supra; Unkel* v. *Robinson* (1912) 163 Cal. 648, 650 [126 P. 485]; 2 Witkin, Cal. Procedure (2d ed. 1970) pp. 1193-1195.) If that substantive right is barred by the statute of limitations, as here, the remedy necessarily fails.

In summary, we hold that if plaintiff has a cause of action for breach of confidence, that cause of action is subject to the two-year limitation of Code of Civil Procedure section 339, subdivision 1. Under the facts as found by the trial court, plaintiff had suffered actual and appreciable harm from defendant's breach by November 11, 1955; the statutory period therefore began to run no later than that date. Neither plaintiff's difficulty in proving the extent of damage, nor the lack of a res on which to impose a constructive trust, delays the running of the period of limitation. Consequently plaintiff's suit when filed on November 19, 1959, was barred by limitations.

The judgment is affirmed.

Wright, C. J., McComb, J., Sullivan, J., Clark, J., Molinari, J.,* and Burke, J.,† concurred.

Appellant's petition for a rehearing was denied July 3, 1975. Mosk, J., did not participate therein.

---

*Assigned by the Chairman of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.