**Charles WARD and Glenna Jo Canum Ward, Plaintiffs,**

v.

**WESTINGHOUSE CANADA, INC.; Engineering Service Division, a division of Westinghouse Electric Corporation; Westinghouse Electric Corporation; Key Tronic Corporation and Does 1–35, inclusive, Defendant.**

No. C 91–3242 BAC.

United States District Court, N.D. California.

Sept. 23, 1992.

Chris R. Redburn, Francis Fernandez, Kazan, McClain, Edises & Simon, Oakland, Cal., for plaintiffs.

Charles B. Cohler, David M. Rosenberg–Wohl, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CAULFIELD, District Judge.

On October 16, 1990, plaintiffs Charles and Glenna Ward ("Ward") filed their complaint against defendants Westinghouse Canada, Incorporated and Westinghouse Electric Corporation ("defendants") in California state court. The Wards' complaint alleges that defendants manufactured and distributed a computer system which Charles Ward had used during his employment as a reservation clerk at Delta Airlines ("Delta"), and that he had developed cumulative trauma disorders and attendant emotional distress from that use. Charles Ward sues for his alleged tendonitis of the wrists. His wife, Glenna Ward, sues for loss of consortium.

Defendants have filed a motion for summary judgment maintaining that plaintiffs' action is barred by the applicable statute of limitations.[1] Upon consideration of the briefs and arguments of the parties, and good cause appearing, defendants' motion for summary judgment is GRANTED.

## I. FACTS AND BACKGROUND

Plaintiff Charles Ward was employed by Delta from February 26, 1979 through June 25, 1990 as a reservations agent. During his tenure at Delta, plaintiff worked, on average, seven hours per day entering reservations into a computer terminal. At least for purposes of this motion, it is undisputed that defendants manufactured and distributed a computer terminal which Mr. Ward had used during many of his years of employment as a reservation clerk.

During deposition, Charles Ward testified that he first noticed pain in his wrists as early as 1984. He further testified that he experienced continual pain and aching numbness in his arms and wrists at some time between 1988 and 1989. As early as September 6, 1989, he consulted Doctor Mark Whitemyer complaining of neck, shoulder, arm and wrist pain. Mr. Ward testified that he originally consulted Dr. Whitemyer for general chiropractic treatment; however, he also testified that as early as 1988 and into 1989 the pain in his arms and wrists had become "pretty bad". On forms filled out in connection with Mr. Ward's visit to Dr. Whitemyer on September 6, 1989, it was indicated that Mr. Ward suffered from "Carpal Tunnel Syndrome".[2] He further testified that by October 1989 the pain became so bad that he sought treatment from a specialist. On October 4, 1989, Mr. Ward reported his symptoms to his supervisor at Delta and requested to see a specialist about his pain.

On October 16, 1989, Mr. Ward consulted Dr. Paul Mills. Later that day, Dr. Mills wrote a letter to Delta detailing his findings from the examination. In his letter, Dr. Mills stated that Mr. Ward's history was compatible with a repetitive overuse phenomenon and that it was work-related. Mr. Ward further indicates that he has had symptoms of his condition since May 1989 in his left wrists and since August 1989 in his right wrist.

## II. DISCUSSION

### A. *Legal Standard*

██ Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is

---

1. Defendant Key Tronic Corporation has filed a joinder to the Westinghouse defendants' motion for summary judgment.

2. Defendants maintain that Mr. Ward wrote "Carpal Tunnel Syndrome" on the forms. Plaintiffs argue that it is not clear who wrote "Carpal Tunnel Syndrome" on the form.

entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be granted when it can be determined that judgment may be entered as a matter of law. *Pepper and Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391 (9th Cir.1977). All reasonable inferences from the evidence are to be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Defendants' motion addresses the statute of limitations applicable to this case. As statute of limitations is an affirmative defense, defendants will bear the burden of proof on that issue at trial. When, as here, the movant bears the burden of proof at trial on the issues raised in the summary judgment motion, his showing must be sufficient for the court to find that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986).

**B.** *Applicable Statute of Limitations*

■ The Wards' claims are controlled by California Code of Civil Procedure § 340(3). Section 340(3) requires that any action for personal injuries must be brought within one year after the cause of action accrued. The one-year statute of limitations also controls a spouse's claim for loss of consortium. *Priola v. Paulino*, 72 Cal.App.3d 380, 386 n. 4, 140 Cal.Rptr. 186 (1977). Plaintiffs argue that claims for fraud and breach of warranty are governed by three and four-year statutes of limitations, respectively. However, the gravamen of the complaint is a claim for personal injuries. Accordingly, as plaintiffs' personal injuries claims are governed by § 340(3), so are their claims for fraud and breach of warranty. *See Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 786 n. 2, 157 Cal.Rptr. 392, 598 P.2d 45 (1979).

**C.** *Accrual of Cause of Action*

■ Traditionally, the limitations period for personal injury actions began to run as soon as plaintiff was aware that he suffered harm, however slight. Recently, however, California courts have modified the traditional rule in an attempt to avoid punishing a plaintiff who has suffered some nominal injury which would support only a suit for insignificant damages. *Miller v. Lakeside Village Condominium Association, Inc.*, 1 Cal.App.4th 1611, 1622, 2 Cal.Rptr.2d 796 (1991). Accordingly, the California Supreme Court has held that a plaintiff is aware of his injury upon suffering "appreciable and actual harm." *Davies v. Krasna*, 14 Cal.3d 502, 513–514, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975).

The *Davies* court cited *Walker v. Pacific Indemnity Co.*, 183 Cal.App.2d 513, 6 Cal. Rptr. 924 (1960) as illustrative of what is not appreciable harm. In *Walker*, an insurance broker carelessly procured a $15,-000 liability policy after his client requested a $50,000 policy. The insured subsequently incurred liability in a personal injury action in excess of $15,000. In rejecting the broker's limitations arguments, the *Walker* court held that the insured's cause of action accrued when judgment was entered, not when the broker procured the wrong policy. In so holding, the court stated "[i]t is clear that mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable.... Of course, it is uncertainty as to the fact of damage, rather than its amount, which negates the existence of a cause of action...." *Id.* at 517, 6 Cal.Rptr. 924, as cited in *Davies* 14 Cal.3d at 513, 121 Cal.Rptr. 705, 535 P.2d 1161.

Here, plaintiff certainly suffered actual and appreciable harm more than one year prior to filing this action. Plaintiff himself testified that he first noticed pain in his wrists as early as 1984. He further testified that he experienced continual pain and aching numbness in his arms and wrists at some time between 1988 and 1989. By at least September 6, 1989, he consulted Dr. Whitemyer complaining of neck, shoulder, arm and wrist pain. On October 4, 1989, Mr. Ward reported his symptoms to his supervisor at Delta and requested to see a doctor about his pain. At that time, he expressed a desire to see a specialist in connection to his symptoms and, on October 16, 1989, he consulted Dr. Paul Mills. Mr. Ward also sought information regard-

ing Delta's workers' compensation carrier. Dr. Mills' letter of October 16, 1989 to Delta specifically stated that Mr. Ward's history was compatible with a repetitive overuse phenomenon, that it was work-related, and that Mr. Ward had symptoms of his condition since May 1989 in his left wrists and since August 1989 in his right wrist.[3]

From the above facts, the only conclusion reasonable minds can draw with respect to plaintiff's injuries is that Mr. Ward suffered appreciable and actual harm by September 6, 1989 when he consulted Dr. Whitemyer, and that he was aware of its negligent cause by October 4, 1989, when he informed Delta of his injuries.

Plaintiffs maintain that the Wards' cause of action did not accrue until March 9, 1990, when he was disabled from using the computer system.[4] Mr. Ward argues that his injuries are cumulative and under California law, where the tortious conduct and injury take place over a long period of time, plaintiffs' cause of action does not accrue until the date of the last exposure to the injury. In support of this argument, plaintiffs rely primarily on authorities under workers' compensation, conspiracy and nuisance law. None of the authorities relied on by plaintiffs address accrual of tort causes of action.[5] Under California law, the "appreciable and actual harm" test governs personal injury actions.

## D. The Discovery Test

Plaintiffs next argue that even if the cause of action accrued initially outside the limitations period, this action is not barred until plaintiffs discovered (1) the injury and (2) its negligent cause. *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109, 245 Cal.Rptr. 658, 751 P.2d 923 (1988). The "discovery rule" is "based on the notion that statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights; therefore, those statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence." *Saliter v. Pierce Brothers Mortuaries*, 81 Cal.App.3d 292, 297, 146 Cal.Rptr. 271 (1978). A plaintiff seeking to assert the "discovery doctrine" is held to his or her actual knowledge as well as fact that could be reasonably discovered through diligent investigation of sources available to him or her. *Jolly*, 44 Cal.3d at 1109, 245 Cal.Rptr. 658, 751 P.2d 923.

We have already found that plaintiff had suffered actual and appreciable injury at least as early as September 6, 1989 and that he was aware of the cause of his injury at least as early as October 4, 1989. Therefore, even if the discovery rule were

**3.** Plaintiffs attempt to argue that, under *Miller*, their causes of action do not accrue until a reasonable finder of fact could conclude that Mr. Ward's pain was constant, chronic, extreme or severe. While the court in *Miller* did make a finding that plaintiff therein had experienced constant, chronic, extreme and severe pain, no such finding is necessary under the "appreciable and actual" harm test.

**4.** Mr. Ward has filed a declaration in opposition to defendants' motion in which he maintains that *the first time he saw a doctor about his wrist-arm pain was on October 16, 1989*, and that he was not aware of the cause of his injury until he began seeing a physical therapist in early 1990. However, a party may not create his own issue of fact merely by "presenting internally contradictory statements (in affidavits and depositions, for example)." *DiMauro v. Pavia*, 492 F.Supp. 1051, 1059 (D.Conn.1979), citing *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir.1975). Decla-

rations filed in opposition to this motion do not, in this court's opinion, convincingly contradict Mr. Ward's deposition testimony and the affirmative steps taken by Mr. Ward to investigate and seek medical care for the pain he experienced in his wrists and arms prior to October 16, 1989.

**5.** Plaintiffs cite *Miller v. Lakeside*, 1 Cal.App.4th 1611, 2 Cal.Rptr.2d 796 (1991) as support for their position that this court should look to the date of last exposure to determine when the cause of action accrues. *Miller* does not support plaintiff's contention. *Miller* applied the "appreciable and actual" harm test of *Davies*. The court looked to the date of last exposure in response to plaintiff's argument that each exposure served as a separate wrong. In rejecting that argument, the court held that "even if we deem each of Miller's exposures ... as a separate wrong, the last exposure" occurred over one year before the case was filed. *Id.* at 1627, 2 Cal.Rptr.2d 796.

applicable to plaintiffs' cause of action, the outcome of this motion would not be materially altered.[6]

### ORDER

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. Plaintiffs' complaint against defendants is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

---

6. *Loubov Sosunova v. The Regents of The University of California,* 8 Cal.App.4th 1166, 11 Cal. Rptr.2d 130 (1992), cited by plaintiff during oral argument does not alter the court's findings. In *Loubov,* a medical malpractice action, the court found that due to the doctor-patient relationship it was reasonable for plaintiff to rely on her doctor's representations that her injuries were not caused by a medical procedure. Here, plaintiffs do not assert that they were somehow prevented from determining the cause of Mr. Ward's injuries by representations made by Delta. In fact, the opposite appears to be true in that after Mr. Ward's October 4, 1989 request that he be allowed to see a specialist, Delta appears to have paid for such a visit.