[Civ. No. 54583. Second Dist., Div. One. Sept. 27, 1979.]

EDGAR C. FARIS, Plaintiff and Appellant, v.
RICHARD ENBERG et al., Defendants and Respondents.

EDGAR C. FARIS, Plaintiff and Appellant, v.
SYNDICAST SERVICES, INC., et al., Defendants and Respondents.

**COUNSEL**

Daigneault, Abel & Daigneault and Don B. Finkelstein for Plaintiff and Appellant.

Lillick, McHose & Charles, Kenneth E. Kulzick and Lawrence W. Dam for Defendants and Respondents.

**OPINION**

**ROTHMAN, J.***—

### BACKGROUND

The developer of an idea for a television sports quiz show (Edgar C. Faris) sued a television sports announcer (Richard Enberg) and others in

---

*Assigned by the Chairperson of the Judicial Council.

two separate actions for appropriating his idea and producing a sports quiz show based upon it. This appeal follows the granting of defendants' motion for summary judgment in the trial court. We affirm the judgment.

In case No. C815[1] the complaint had three causes of action: the *first* for an express contract; the *second* for an implied contract; and the *third* for a breach of confidence.

In case No. C80120[1] plaintiff alleged essentially identical facts, naming Enberg and several other defendants. This complaint included two causes of action: the *first* for plagiarism; and the *second* for implied contract.

Numerous defendants were served in both actions, including, among others, Gerald Gross Productions, Inc., Golden West Broadcasters (operators of KTLA-TV) and Gerald Gross.

In case No. C815, interrogatories, requests for admissions, and requests for documents were filed and responses were made. The court ordered further answers to certain of plaintiff's interrogatories. In case No. C 80120 defendants filed a demurrer to the complaint, which the court granted and dismissed the case. Plaintiff appealed that decision. At about the same time, all parties entered a stipulation in both cases: staying further proceedings in case No. C815 until a final decision on appeal in No. C 80120; waiving Code of Civil Procedure section 583, subdivision (b)[2] as to case No. C815; and agreeing that No. C815 would be dismissed if granting of the demurrer and dismissal in No. C80120 were affirmed on appeal. In an unpublished opinion, the Court of Appeal affirmed the trial court's dismissal as to the first cause of action for plagiarism, affirmed the dismissal of the second cause as to implied-in-law contract, but reversed the dismissal of the second cause of action for implied-in-fact contract.[3]

After the decision in *Faris I* was filed on June 21, 1977, defendants moved for summary judgment on both cases. The motion was granted, judgment entered, and plaintiff has appealed that ruling.

---

[1]Referring to the superior court case numbers. The cases were consolidated in trial.

[2]Relating to the five-year limitation on bringing a case to trial.

[3]This decision will hereinafter be referred to as *Faris I*.

## Issues on Appeal

Plaintiff has raised these primary issues on this appeal: (1) the court erred in granting plaintiff's motion for summary judgment because there were triable issues of fact as to the existence of an implied-in-fact contract; and (2) the court erred in granting the motion as to a cause of action for breach of confidence.[4]

■ In ruling on a motion for summary judgment, the trial court decides "[W]hether or not the party opposing the motion has presented any facts which give rise to a triable issue or defense, and not to pass upon or determine the issue itself, that is, the true facts in the case. The facts alleged in the affidavits of the party against whom the motion is made must be accepted as true, and that such affidavits to be sufficient need not necessarily be composed wholly of strictly evidentiary facts. A summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain judgment in his favor, and his opponent does not by affidavit show such facts as may be deemed by the judges hearing the motion sufficient to present a triable issue of fact. The affidavits are to be construed with all intendments in favor of the party opposing the motion. . . . In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining the facts." (*Blaustein v. Burton,* 9 Cal.App.3d 161, 175-176 [88 Cal.Rptr. 319].)

## Facts

The following are the facts set forth in plaintiff's declaration in opposition to the motion. Faris conceived a sports quiz show idea in 1964, and prepared and registered a format of the idea.[5] A few days before June 4, 1970, Faris called KTLA studios and told a secretary that he had created a sports television show that would interest Mr. Enberg. He left his name and number. The next day Enberg telephoned Faris, who told Enberg that he ". . . had a sports oriented TV show that I intended to

---

[4]Plaintiff also complains that the court should not have granted the motion as to defendants who did not file declarations, and that he did not complete his discovery. These issues will be dealt with in connection with the two primary issues noted above.

[5]The format was attached to the complaints as an exhibit.

produce and that *I desired to talk to him about participating in the show as the master of ceremonies.*" (Italics added.) Enberg was interested and asked when they could meet, and the next day was agreed upon. They met at KTLA studios. Enberg was late and apologized. Faris told Enberg the format of the show and gave Enberg a copy, which Enberg read through at the meeting, and again expressed interest. Enberg asked for a copy, and Faris said it was his "creation" and "literary property." "I discussed with Mr. Enberg his prospects as to both being an MC for the show or, if he desired, actually participating with me in the production of the show and could participate then as a part owner thereof. At all times I discussed my show and Mr. Enberg's participation as a business proposal or offer to Mr. Enberg and I mentioned to him that, if he came with me, we would both make money on the show." Enberg told Faris he was going to talk the next week with some KTLA producers about a sports show. He asked Faris to leave a copy of the format for further review.[6] Faris made these additional statements in his declaration (although the declaration does not say that he told Enberg any of them): that he did not authorize Enberg to discuss the format with anyone or to give it to anyone else; that had Enberg told Faris he planned to show the format to anyone else or discuss the format with anyone else, Faris would not have left a copy with Enberg, and that had Enberg told Faris of his commitment with another sports quiz show, Faris would not have discussed the show with him or let Enberg read or have the format, and would not have "proposed a contractual relationship with him involving either his participation as a owner or acting as MC for my Sports Panel Quiz . . . ."

Also attached to the response to the motion for summary judgment were portions of Enberg's deposition wherein he testified that he may have revealed to the people that ultimately produced the "Sports Challenge" quiz show, that he had been contacted by someone about a sports quiz show.

From defendants' motion for summary judgment, these facts were excerpted from Faris' deposition. In December of 1969 Faris saw Enberg on television. Faris was thinking about his quiz show idea and thought: "It was just a question of getting the right person to do the show. Enberg impressed me. He was articulate, he was very, I thought, fine announcer, and this brought to mind—I said, that man, in my mind, suited the role of the MC for this show, . . . [¶] [S]o my idea was to go to Mr. Enberg with

---

[6]The trial court's memorandum recites that Enberg took the format home to read and returned it the next day without showing it or discussing it with anyone else. In fact, Enberg kept it three to four days and talked to his wife and defendant Gross about the contact with Faris.

this format in an attempt to go with me on it." He had considered many other sports personalities for master of ceremonies, and decided on Enberg. He told Enberg at the meeting that "if you will come with me and do the show, you can have a piece of the show. You can own it. You won't have to work for a salary for somebody else."

At some time following this meeting, the "Sports Challenge" show appeared on television with Enberg as master of ceremonies, and produced by defendant Gross. There were certain differences and similarities between the show and plaintiff's idea. Although Gross claimed the production of the show was well under way before Faris met Enberg, we cannot in this appeal assume such to be true, nor do we consider any facts in conflict with plaintiff's version of events.

## DISCUSSION

### I

Plaintiff contends that the evidence and law do not support the trial judge's order granting summary judgment against plaintiff on the causes of action in the two complaints for an implied-in-fact contract.

Since the claims of plagiarism and implied-in-law contract were decided against plaintiff by the Court of Appeal in *Faris I*, plaintiff was left with the causes of action on implied-in-fact contract and breach of confidence.[7] The Court of Appeal ruled that plaintiff's idea concerning a sports quiz show was not novel and concrete and thus not subject to copyright protection. Accordingly, the court sustained dismissal of the plaintiff's first cause of action for infringement. Further, the Court of Appeal held as to the second cause of action that plaintiff could only recover on a theory of an implied-in-fact contract, and not on a theory of a contract implied-in-law. This latter holding was based upon the rule that an implied-in-law contract required virtually the same proof as a suit for plagiarism (that the property must be protectable, i.e., novel and concrete). The Court of Appeal pointed out that the existence and the terms of an implied-in-fact contract are manifest by conduct, and there need be no showing of literary protectability. Thus, no matter how slight or commonplace is the material or idea which is revealed, the courts will not question the adequacy of the consideration.

---

[7] See heading II below for discussion concerning the cause of action for breach of confidence.

Turning, then, to consideration of the question of whether there was an implied-in-fact contract, two notable Supreme Court cases have thoroughly dealt with the subject in the area of literary works or ideas. In *Weitzenkorn* v. *Lesser,* 40 Cal.2d 778 [256 P.2d 947], plaintiff wrote a story about Tarzan and the fountain of youth, and submitted it to producer Sol Lesser. The plaintiff sued on a theory of express contract, defendant's demurrer was granted in the trial court, and reversed by the Supreme Court. The Supreme Court held that regardless of a work's lack of originality, it could be valuable and the subject of contract: " 'While the idea disclosed may be common or even open to public knowledge, yet such disclosure if protected by contract, is sufficient consideration for the promise to pay. [Citations.]' " Even if the plaintiff's story and the movie Sol Lesser produced were grossly dissimilar, the court found that plaintiff was entitled to try to prove that defendant agreed to pay for the use of this commonplace idea. (40 Cal.2d at p. 792.)

In *Desny* v. *Wilder,* 46 Cal.2d 715 [299 P.2d 257], plaintiff submitted to Billy Wilder's secretary a story based on the life of cave explorer Floyd Collins. The Supreme Court found that there were triable issues of fact, and reversed the lower court's order granting summary judgment to defendant. In doing so, the court carefully explained the subject of implied-in-fact contracts. Plaintiff called Billy Wilder on the telephone, and was told by a secretary that, because Wilder was so busy, plaintiff would have to present a synopsis for Wilder to read. Plaintiff told the secretary that he would have to be paid if they used it. His purpose was to sell the story. Plaintiff prepared the synopsis, read it to the secretary over the phone, and later Wilder produced a film which appeared to be similar to plaintiff's work. The work was not protected on any theory other than a contract express or implied from the facts. Quoting from *Stanley* v. *Columbia Broadcasting System,* 35 Cal.2d 653, 674 [221 P.2d 73, 23 A.L.R.2d 216], the court ruled that "The policy that precludes protection of an abstract idea by copyright does not prevent its protection by contract. Even though an idea is not property subject to exclusive ownership, its disclosure may be of substantial benefit to the person to whom it is disclosed. That disclosure may therefore be consideration for a promise to pay. . . . [¶] Even though the idea disclosed may be 'widely known and generally understood' [citation] it may be protected by an express contract providing that it will be paid for regardless of its lack of novelty." The court limited its holding with this language: "The idea man who blurts out his idea without having first made his bargain has no one but himself to blame for the loss of his bargaining power. The law will not in any event, from demands stated subsequent to the unconditional

disclosure of an abstract idea, imply a promise to pay for the idea, for its use, or for its previous disclosure. *The law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue.* So, if the plaintiff here is claiming only for the conveyance of the idea of making a dramatic production out of the life of Floyd Collins he must fail unless in conformity with the above stated rules he can establish a contract to pay." (Italics added; 46 Cal.2d 715, 739.)

■ Accordingly, for an implied-in-fact contract one must show: that he or she prepared the work; that he or she disclosed the work to the offeree for sale; under all circumstances attending disclosure it can be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered (i.e., the offeree must have the opportunity to reject the attempted disclosure if the conditions were unacceptable); and the reasonable value of the work. (See *Desny* v. *Wilder, supra,* p. 744.)

■ Applying these elements to the instant case, we find that the trial court correctly determined that there was no triable issue of fact on a cause of action for an implied-in-fact contract. The trial judge correctly concluded that "Enberg . . . is entitled to summary judgment, since there is no evidence to support an implied-in-fact contract for the services of revealing plaintiff's format to him. All the evidence is to the contrary. Both participants to the conversation agreed that the format was submitted to Enberg in connection with an inquiry as to whether Enberg would act as master of ceremonies for plaintiff's television show. . . . There is absolutely no evidence that plaintiff expected, or indicated his expectation of receiving compensation for the service of revealing the format to Enberg. To the contrary, the sole evidence is that plaintiff voluntarily submitted it to Enberg for the sole purpose of enabling Enberg to make a determination of his willingness to enter into a future business relationship with plaintiff."

So far as the record before us reveals, plaintiff never thought of selling his sports quiz show idea to anyone—including Enberg. He appears at all times to have intended to produce it himself, and sought out Enberg, as a master of ceremonies. He obviously hoped to make his idea more marketable by hiring a gifted sports announcer as his master of ceremonies. Not only did Faris seek to induce Enberg to join him by showing him the product, but also sought to entice him by promises of a

"piece" of the enterprise for his involvement. Plaintiff never intended to submit the property for sale and did not tell Enberg that he was submitting it for sale. There is no reason to think that Enberg, or anyone else with whom Enberg spoke, would have believed that Faris' submission was an offer to sell something, which if used would oblige the user to pay.

Based on the clear holding of *Desny* an obligation to pay could not be inferred from the mere fact of submission on a theory that everyone knows that the idea man expects to be paid. Nor could it be inferred from the comment by Faris that the format was his "creation" and "literary property." In *Desny* the court held that the mere submission of an idea by a writer could not create the obligation. So, necessarily, the converse must also be the case: that knowledge on the part of the recipient that the submitter is a writer possessing his or her unprotected literary creation could not create an obligation to pay. Plaintiff's statements that he would not have revealed the format or idea to Enberg had he known that Enberg was going to show it to anyone else were not germane since he never told this to Enberg.

Plaintiff attempted to impose a contract on the facts of this case by asserting that Enberg solicited the submission, returned plaintiff's phone call and asked to keep a copy of the format. We do not agree. Faris solicited Enberg's involvement. It would be entirely inconsistent with *Desny* to hold that an implied-in-fact contract could be created because a telephone call was returned or because a request was made for an opportunity to read the work that was unconditionally submitted.

Plaintiff argues that he is supported by the holding in *Thompson* v. *California Brewing Co.,* 150 Cal.App.2d 469 [310 P.2d 436], to the effect that when the recipient permits the submission of an idea with an awareness that the submitter does so in the expectation of payment if the idea is used, such is conduct from which a promise to pay may be inferred. The weakness in this argument, as already noted, is that there was no evidence that plaintiff expected Enberg to pay, and thus, Enberg could not be charged with such an awareness that plaintiff himself did not have.

In *Donahue* v. *Ziv Television Programs Inc.,* 245 Cal.App.2d 593, 606 [54 Cal.Rptr. 130], for example, the court found an implied-in-fact contract where the submitter of the format that eventually became the "Sea Hunt" television series had numerous conversations with the

producers where compensation to the submitter was discussed. The court said that "Although the purveyor of the idea conditions his offer to disclose on an obligation to pay for it, he to whom it is disclosed must have an opportunity to reject disclosure on the terms offered." There was, the court said, strong evidence that the recipient of the disclosure "realized all along that plaintiffs expected to be paid for their idea."

## II

In plaintiff's third cause of action in case No. C815 he alleged a breach of fiduciary obligation: that he "submitted in confidence to the defendants, both orally and in writing" the sports quiz show idea; that "Defendants accepted the submission of such idea in confidence, and on the understanding that they would not use the idea without the consent of the plaintiff"; and that defendants did use the idea without plaintiff's consent.

Under the consolidated case Nos. C815 and C80120 defendants filed a motion "to dismiss plaintiff's First Amended Complaint herein and render summary judgment . . ." None of the papers filed on either side specifically mentioned the third cause of action in case No. C815. The papers focused on the causes of action in the two suits relating to breach of implied-in-fact contract. The trial court's memorandum granting the motion as to the entirety of the actions, noted at the outset the existence of this third cause of action. The court, however, did not discuss the issue of breach of confidential relationship in its opinion.

Plaintiff asserts that the court erred in granting summary judgment on this third cause of action. He says that Enberg's affidavit did not deny that the Enberg-Faris meeting was of a confidential nature, nor that the idea was submitted in confidence, arguing that "[T]he Affidavits and/or Declarations were totally insufficient to deny the existence of the confidential relationship."

Defendants raise several objections to consideration of this issue on appeal. They claim that a stipulation of the parties resolved this third cause of action. At the time of the appeal of the demurrer in case No. C80120 (which resulted in *Faris I*), the parties entered a stipulation staying the proceedings in C815 pending decision on the appeal in *Faris I*, and agreeing to the dismissal of C815 if *Faris I* affirmed the granting of the demurrer in C80120. Clearly, the stipulation did not have the effect of "subsuming" C815 into C80120. Further the decision in *Faris I* did not

affirm the granting of the demurrer, and therefore plaintiff was not obliged to dismiss C815. Next, defendants assert that a cause of action for breach of confidence has not been recognized by the California Supreme Court. We know of no authority, and none is cited, that requires approval of legal theory by the California Supreme Court before it can be pleaded. ■ In any event, we have no difficulty in concluding that a cause of action for breach of confidence is recognized in California, including the Supreme Court. (*Ruhl* v. *Mott* (1898) 120 Cal. 668, 679 [53 P. 304]; *Davies* v. *Krasna,* 245 Cal.App.2d 535, 549 [54 Cal.Rptr. 37]; *Davies* v. *Krasna,* 14 Cal.3d 502, 508-510 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]; *Thompson* v. *California Brewing Co.* 150 Cal.App.2d 469, 474 [310 P.2d 436]; *Fink* v. *Goodson-Todman Enterprises, Ltd.,* 9 Cal.App.3d 996, 1009-1010 [88 Cal.Rptr. 649].)

It is defendants' major contention that a literary work has to be protectable under copyright law in order to be the basis of a breach of confidence action. They argue that since *Faris I* held that the sports quiz show format was not protectable, plaintiff should have no access to a cause of action for breach of confidence.

In *Thompson* v. *California Brewing Co., supra,* 150 Cal.App.2d 469, plaintiff alleged that he submitted a new and novel idea to defendant "in confidence," and that defendant accepted the confidence with an understanding the idea would not be used without plaintiff's consent. The Court of Appeal reversed the trial court's granting of a demurrer, holding that the allegation of confidential relationship and defendants' voluntary assumption thereof overcame the demurrer. In discussion, the court noted that this cause of action was not limited to fiduciary relationships, but could exist in any number of situations, such as principal and agent, partners, joint adventurers, and in a buyer/seller relationship where a trade secret is disclosed in the course of confidential negotiations on the price to be paid for the secret. Further, the court, citing Restatement of Torts, section 757, comment b,[8] held that this principle applies even where there was no trade secret: " '[O]ne who receives the information in confidential relation or discovers it by improper means may be under some duty not to disclose or use that information. Because of the confidential relation or the impropriety of the means of discovery, he may be compelled to go to other sources for the information. . . .' " (150 Cal.App.2d at p. 476.)

---

[8]This and related sections were omitted in the Restatement Second of Torts.

In *Davies* v. *Krasna* (1966) 245 Cal.App.2d 535 [54 Cal.Rptr. 37], Davies, a writer, submitted a story to Jerry Wald. Later Wald's business partner, Norman Krasna, authored the film "Who Was That Lady I Saw You With," which was similar to the plaintiff's idea. Plaintiff sued for breach of implied contract and breach of confidence. The court said: "Implicit in an agreement of the nature of that herein involved [an implied-in-fact contract] is the obligation to guard the idea so submitted from disclosure to third persons by any act or omission on the part of the corporation, its officers or employees. [Citations.] A violation of that duty would constitute a breach of confidence. [Citations.]" (245 Cal.App.2d at p. 549.) The court found sufficient evidence to warrant a trial on the claim of breach of confidence from the inference that one could draw that Krasna had access to Davies' script through Wald, and the two stories were similar.

After the case went to trial, it reappeared in the Supreme Court. In deciding an issue unrelated to that before us here, the Supreme Court explained that a cause of action for breach of confidence "arises whenever an idea, offered and received in confidence, is later disclosed without permission." (*Davies* v. *Krasna, supra,* 14 Cal.3d at p. 510.)

In *Fink* v. *Goodson-Todman, Enterprises, Ltd.,* 9 Cal.App.3d 996 [88 Cal.Rptr. 649], plaintiff charged defendants with a breach of fiduciary obligation not to use something submitted in confidence. The court believed that protection by reason of sufficient novelty and elaboration was a necessity for the "unjust enrichment-breach of confidence count," reasoning: "This is because they are not based upon, and so do not have the limitations of, contractual promises. . . . It is not based on apparent intentions of the involved parties; it is an obligation created by law for reasons of justice. [Citations.] The scope of common law copyright and quasi contract 'reaches and renders liable persons other than the limited number who may have consented to a contractual relationship.' There is the danger of monopoly and restraint in progress in art." (9 Cal.App.3d pp. 1009-1010.)

Nimmer on Copyright, section 16.06, states that protection of the disclosure takes place "only if the confidential nature of the disclosure is made clear prior to the exhibition." Nimmer explains that "Probably proof that the plaintiff offered the idea upon condition of confidence and a clear understanding that payment would be made upon use would suffice in some instances" to establish a confidential relationship.

■ We conclude that copyright protectability of a literary work is not a necessary element of proof in a cause of action for breach of confidence. An actionable breach of confidence will arise when an idea, whether or not protectable, is offered to another in confidence, and is voluntarily received by the offeree in confidence with the understanding that it is not to be disclosed to others, and is not to be used by the offeree for purposes beyond the limits of the confidence without the offeror's permission. In order to prevent the unwarranted creation or extension of a monopoly and restraint on progress in art, a confidential relationship will not be created from the mere submission of an idea to another. There must exist evidence of the communication of the confidentiality of the submission or evidence from which a confidential relationship can be inferred. Among the factors from which such an inference can be drawn are: proof of the existence of an implied-in-fact contract (*Davies* v. *Krasna*, 245 Cal.App.2d 535 [54 Cal.Rptr. 37]); proof that the material submitted was protected by reason of sufficient novelty and elaboration (*Fink* v. *Goodson-Todman Enterprises, Ltd.*, 9 Cal.App.3d 996 [88 Cal.Rptr. 649]); or proof of a particular relationship such as partners, joint adventurers, principal and agent or buyer and seller under certain circumstances. (*Blaustein* v. *Burton*, 9 Cal.App.3d 161, 187 [88 Cal.Rptr. 319]; *Thompson* v. *California Brewing Co.*, 150 Cal.App.2d 469, 475 [310 P.2d 436].)

With these rules as a base, we consider plaintiff's contention that the trial court erred in granting defendants' motion for summary judgment on the cause of action for breach of confidence.[9]

Among the facts mentioned and not mentioned in plaintiff's declaration were these: he told defendant that the sports quiz show format was his "creation" and "literary property"; he told Enberg that he wished to hire Enberg to be the master of ceremonies for the show; he said that he would never have told Enberg about the idea if he knew Enberg would disclose it to others, although he apparently never advised Enberg of this thought; and he did not, so far as we can tell from his declaration, tell Enberg that the material was given in confidence.[10] ■ We do not

---

[9]In reaching consideration of this final point, we note defendants' assertion that plaintiff, having failed to raise the issue in the trial court, is estopped to do so on appeal. In its memorandum of decision, the trial court noted the existence of the cause of action for breach of confidence. Judgment was rendered in the trial court against plaintiff on both suits, including all causes of actions therein. It is therefore appropriate on appeal of the granting of the motion for summary judgment to review whether there was a sufficient basis in the record to support the decision.

[10]The only facts asserted by plaintiff are in his declaration and other papers filed in the summary judgment motion. There does not appear to be any other facts concerning the Enberg relationship bearing on this issue. If there were, it was plaintiff's obligation to

believe that the unsolicited submission of an idea to a potential employee or potential business partner, even if that person then passes the disclosed information to a competitor, presents a triable issue of fact for confidentiality. Here, no rational receiver of the communications from Faris could be bound to an understanding that a secret was being imparted. One could not infer from anything Enberg did or said that he was given the chance to reject disclosure in advance or that he voluntarily received the disclosure with an understanding that it was not to be given to others. To allow the disclosure which took place in this case to result in a confidential relationship, without something more, would greatly expand the creation of monopolies and bear the concomitant danger to the free communication of ideas. Our conclusion that evidence of knowledge of confidence or from which a confidential relationship can be implied is a minimum prerequisite to the protection of freedom in the arts. In the instant case, there was no direct evidence that either party believed that the disclosure was being made in confidence. Only in plaintiff's response to summary judgment is there reference to his own thoughts from which one might infer that he felt there was a confidence. But he never, so far as we can tell, communicated these thoughts to Enberg, and nothing of an understanding of confidence can be inferred from Enberg's conduct. No other special facts exist from which the relationship can be inferred: there was no implied-in-fact contract; the material was not protectable; and they were not yet partners or joint adventurers, and there was no buyer/seller or principal/agent relationship. Plaintiff might argue that he and Enberg were joint adventurers, but such was only Faris' unfulfilled hope. There was no evidence of more than a conversation which might have developed into a relationship later on. When compared with the joint adventure in *Blaustein* v. *Burton, supra,* 9 Cal.App.3d 161, the sparcity of Faris' case is apparent. In *Blaustein* plaintiff and defendants used the same attorneys, plaintiff had been invited constantly by the defendants (Richard Burton and Elizabeth Taylor) to disclose his idea that they make a movie of "The Taming of the Shrew." He also rendered

---

present them to the trial court. Plaintiff, for the first time on appeal, claims that he was not given the opportunity to complete discovery before the summary judgment motion was heard. The court will not usually consider for the first time on appeal contentions which could be easily have been raised in the trial court. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 272 et seq., p. 4260 et seq.) Although the court ordered defendants to answer certain interrogatories, and the answers were not made before the motion for summary judgment was filed, plaintiff failed to bring the issue before the trial court, and never complained that he lacked the facts upon which to respond to the motion for summary judgment. The only interrogatories that might be germane to this appeal are those relating to Faris' contact with Enberg. Since we accept plaintiff's version of these events on appeal, we can see no prejudice to plaintiff. Interrogatories related to Enberg's use of the material or his contacts with others would only be relevant if there were a contractual or confidential relationship.

services at their request on the project. The court concluded that there was sufficient evidence to go to trial on a confidence theory.[11] Plaintiff's submission to Enberg was so tenuous and careless, that, as a matter of law, we find that the trial court correctly concluded that there were insufficient facts to warrant a trial.[12]

The judgment is affirmed.

Lillie, Acting P. J., and Hanson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 29, 1979. Mosk, J., was of the opinion that the petition should be granted.

---

[11]Plaintiff further cites *Aronson* v. *Quick Point Pencil Co.,* 440 U.S. 257 [59 L.Ed.2d 296, 99 S.Ct. 1096], in support of his contention that there was a confidential relationship. The case involved the contract, and not a cause of action for breach of confidence.

[12]Plaintiff also contends that since the declarations of defendants in support of summary judgment included no reference whatever to any defendant other than Enberg, there was no factual basis for the trial court's granting of the motion as to any defendant other than Enberg. In light of our conclusions with regard to the nonexistence of causes of action as to Enberg, there could be no basis for liability as to any defendant with whom Enberg might have had contact: not having been bound by a relationship of contract or confidence with Faris, Enberg was free to disclose the idea to anyone.