**Thurman V. WHITFIELD, Plaintiff,**

**v.**

**Norman LEAR, Tandem Productions, Inc., Tat Communications Company, Topper Carew and Rainbow Television Workshop, Inc., Defendants.**

**No. 81 Civ. 1824.**

United States District Court, E.D. New York.

March 16, 1984.

cable.

Carl E. Person, New York City, for plaintiff.

Pryor, Cashman, Sherman & Flynn, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff commenced this diversity action alleging violations of the Federal Copyright Act, 17 U.S.C. § 101, et seq., and the Lanham Trademark Act, 15 U.S.C. § 1051, et seq., as well as a variety of state common law claims. Specifically, he alleges that the defendants, through their production of the television series entitled, "The Righteous Apples," wrongfully used ideas contained in his script for a series entitled, "Boomerang." Defendants have moved this Court, pursuant to Rule 56, for summary judgment. For the reasons set forth herein, defendants' motion is granted.

*Background*

Plaintiff is a retired radio announcer residing in New York. Between the years 1974 and 1979, he wrote a format for a television program or series entitled "Boomerang" containing a story of an interracial crime-fighting disco band. The five band members, post-high school teenagers, fight crime by using their athletic and gymnastic abilities, as well as with the help of boomerangs and other exotic weapons. On April 3, 1979, plaintiff obtained a copyright on a 16 page manuscript for the program. He subsequently added three scenes to this manuscript, and then submitted typed copies of his work to at least eight television companies in the hope that his work would be produced as a television series. Plaintiff alleges that defendants Lear and Tandem Productions were sent one such copy, after being advised in advance by mailgram that the submission was being sent. He further alleges that rather than rejecting this submission, these defendants forwarded the copy to defendant TAT Communications.

Defendant Carew is a writer, producer and director of radio, television and theatrical productions and is president of defendant Rainbow Television Workshop, Inc. Between the years 1975 and 1977, he began work on a proposed television series entitled "The Righteous Apples." The program is described by defendants as a reality based situation comedy designed to encourage adolescent and young adults to communicate effectively across cultural and racial lines by offering examples of pro-social behavior in instances of social and racial conflict. The focus of the show, as designed and later produced for public television, was an interracial musical group consisting of six (later four) high school students and their experiences growing up

in their environment. A principal figure in the episodes is a black history teacher who advises the students and articulates many of the social messages of the program.

A 16 page treatment of "The Righteous Apples" was registered with the Writers' Guild of America on August 29, 1977. Subsequently, defendant Carew, on behalf of defendant Rainbow, contracted with the Corporation for Public Broadcasting for the production of a thirty minute pilot film of "The Righteous Apples." Although the pilot was never aired, a twenty episode series was eventually produced and broadcast, beginning in 1979.

On June 4, 1981, plaintiff commenced this action. He alleges that the ideas contained in his script, although not available to defendants at the time of the production of the pilot film of "The Righteous Apples," were utilized in the production of the twenty part series. According to plaintiff, defendant Carew gained access to plaintiff's work through Michael Weisbarth, an employee of defendant Tandem Productions, who served as a consultant on "The Righteous Apples," and by studying television production with defendant Lear at Tandem Productions in 1978 and 1979.

Based on this claim of access and use, plaintiff alleges the following causes of action, based on California law:

(1) Breach of contract;

(2) Breach of confidential or fiduciary relationship;

(3) Fraud and misrepresentation;

(4) Misappropriation and commercial piracy;

(5) Unfair competition; and

(6) Restitution, based on quasi-contract and unjust enrichment.[1]

Plaintiff's complaint also contained a federal claim for copyright infringement and for violation of the Lanham Act, but these claims were withdrawn in response to the present motion for summary judgment.

For purposes of their motion for summary judgment, defendants have conceded the validity of plaintiff's copyright and their own access to the copyrighted work. They argue that: (1) plaintiff has no protectible interest in his idea alone; (2) plaintiff's common law claims are precluded by the Federal Copyright Act; and (3) even if plaintiff's common law causes of action survive the Copyright Act, these claims should nevertheless be dismissed because plaintiff's script and defendants' series are not substantially similar and thus do not create an inference of wrongful use.

Plaintiff contends that insofar as he is seeking redress for the utilization of his ideas, his claims are cognizable under California law and are not precluded by the Copyright Act. As to the question of substantial similarity, plaintiff argues that the use of this standard is not relevant to his state law claims and that in any event the ideas contained in defendants' production are substantially similar to those contained in his script.

## II. Discussion

### A. Pre-emption of Plaintiff's State Law Claims

17 U.S.C. § 301 of the Copyright Act of 1976 provides in relevant part:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no

---

1. Plaintiff's complaint and Rule 9(g) statement contained additional causes of action, such as one for breach of an implied covenant of good faith and fair dealing. Since these claims have not been supported in plaintiff's responding brief, however, I will assume that they have either been withdrawn or are subsumed under the other causes of action that plaintiff does assert to have merit. In any event, the findings in this opinion regarding the issues of substantial similarity and implied contracts would be applicable to these claims as well.

person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State. (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—.... (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

In commenting on this section, the House Committee of the Judiciary stated: "The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of the Federal Copyright law." H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. at 130 (1976) (hereinafter "House Report"), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5746.

Defendants cite several Second Circuit and New York District Court opinions for the proposition that this section has the effect of pre-empting plaintiff's unfair competition and misappropriation claims. *See, e.g., Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 918–19 (2d Cir.1980); *Giangrasso v. CBS, Inc.,* 534 F.Supp. 472, 478 (E.D.N.Y.1982); *Harper & Row Publishers v. Nation Enterprises,* 501 F.Supp. 848 (S.D.N.Y.1980); *Orth-O-Vision, Inc. v. Home Box Office,* 474 F.Supp. 672, 684 (S.D.N.Y.1979).

I find that these cases are not controlling for two reasons. First, they are not addressed to the various common law claims alleged under California law, which may have different contours than the New York common law claims that were deemed pre-empted. Second, and more important,

plaintiff here claims an infringement of his ideas, which are non-copyrightable. Given the above quoted legislative history, it is unlikely that these claims are pre-empted by the Copyright Act. *See also* House Report at 132, U.S.Code Cong. & Admin. News 1976, p. 5748 ("The evolving common law rights of ... trade secrets and the general law of defamation and fraud, would remain unaffected as long as the causes of action contain elements, such as ... breach of trust or confidentiality, that are different in kind from copyright infringement. Nothing in the bill derogates from the rights of parties to ... sue for breaches of contract ....")

**B.** *Causes of Action Available To Redress the Alleged Use Of Plaintiff's Ideas.*

The fact that plaintiff's claims may not be federally pre-empted does not necessarily mean that they have merit under California law. Plaintiff has clearly stated that his claims are based solely on his interest in the ideas contained in his manuscript. See plaintiff's Rule 9(g) statement. Beginning with *Weitzenkorn v. Lesser,* 40 Cal.2d 778, 256 P.2d 947 (1953), the California courts have determined that an idea is not protectible on a property right theory. *See* 3 Nimmer on Copyright, § 16.03 at 16–5 to 16–7.[2] Therefore, plaintiff can only assert those common law claims that are not dependent upon the assertion of a property right. This requirement limits plaintiff to an action for breach of an implied-in-fact contract, *see Desny v. Wilder,* 46 Cal.2d 715, 299 P.2d 257 (1956); *Weitzenkorn, supra,* since the remaining five common law claims stated by plaintiff are only actionable to redress the improper use of protectible property interests. (3) *See Weitzenkorn, supra* (actions for breach of

**2.** As Professor Nimmer explains, this determination resulted from an amendment to California Civil Code § 980. Originally, this section provided that "[t]he author of any product of the mind ... has an exclusive ownership therein, and in the representation or expression thereof...." *Id.* (emphasis added). The amendment deleted the underscored words. It was on this basis that the court in *Weitzenkorn* distin-

guished *Golding v. RKO Pictures, Inc.,* 35 Cal.2d 690, 221 P.2d 95, an earlier opinion preceding the amendment that found the "basic dramatic core" of a plaintiff's work to be protectible. *Weitzenkorn* held that the basic dramatic core was another name for an idea which, under the amended statute, was not protectible on a property theory. 256 P.2d at 955–56.

implied-in-law contract and plagiarism limited to use of plaintiff's property interest); *Mann v. Columbia Pictures*, 128 Cal. App.3d 628, 633–34, 180 Cal.Rptr. 522, 523–26 (1982) (recovery under quasi-contract theory limited to use of property rights); *Minniear v. Tors*, 266 Cal.App.2d 495, 72 Cal.Rptr. 287 (1968) (no action for conversion or fraud in absence of property right).

Defendants claim that plaintiff's implied-in-fact contract claim must fail as well because there are insufficient facts from which one could infer the existence of a contract to pay for the use of plaintiff's

ideas. Professor Nimmer has suggested that under California law, the existence of a contract might be inferred in the entertainment field where, as here, a producer allegedly is notified in advance of the transmission of a work and fails to reject a sealed submission before opening it.[3] Nimmer on Copyright, § 16.05[B] at 16–32 to 16–34; § 16.05[C], at 16–34 to 16–37, (citing *Desny v. Wilder, supra; Donahue v. Ziv Television Products, Inc.*, 245 Cal.App.2d 593, 54 Cal.Rptr. 130 (1966)). While I am not entirely persuaded that the theory is sustainable at all, let alone under the facts alleged in the present case,[4] I will assume

3. In so finding, I am assuming that plaintiff's cause of action for "breach of confidential or fiduciary relationship" was contemplated as a quasi-contract action for breach of confidence rather than a constructive fraud action for breach of a confidential relationship. Under California law,

> [a] confidential relationship exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. A confidential relationship may exist although there is no fiduciary relation; it is particularly likely to exist where there is a family relationship or one of friendship or such a relation of confidence as that which arises between physician and patient or priest and penitent.

*Davies v. Krasna*, 14 Cal.3d 502, 509, 121 Cal. Rptr. 705, 710, 535 P.2d 1161, 1166 (1975) (quoting Restatement 2d Trusts, § 2, com. b).

Clearly, plaintiff has not alleged facts that would support the finding of a confidential relationship under this definition. Rather, plaintiff's dealings with defendants constituted the type of arms-length negotiation that the California courts have found cannot form the basis of a constructive fraud action for breach of a confidential relationship. *See Davies, supra*, 14 Cal.3d at 512, 121 Cal.Rptr. at 711, 535 P.2d at 1167 (where transaction took place between men engaged in the business of selling and exploiting ideas for movies, "[t]he circumstances of that transaction may impose upon defendant a duty to refrain from unauthorized disclosure of the idea, but they are insufficient to impose upon him the fiduciary-like duties that arise from a confidential relationship"); *Faris v. Enberg*, 97 Cal.App.3d 309, 322–23, 158 Cal.Rptr. 704, 712–13 (1979) (the unsolicited submission of an idea to a *potential* employee or *potential* business partner, even if that person then passes the disclosed information to a competitor, results in no inference that a confidence or a confidential relationship has been created). *Compare Stevens v. Marco*, 147 Cal.App.2d 357, 305 P.2d 669, 678–79 (1956) (where inventor

relies on good faith and integrity of *contractual partner* professing to have the ability and facilities to develop, patent, and exploit the invented device upon his promise to pay the inventor royalties on future sales, the divulgence of the inventor's secret creates a confidential relationship).

At best, the facts alleged by plaintiff can support a claim that his ideas were disclosed in confidence, which would give rise to an action for breach of confidence. This type of claim is actionable only under a theory of quasi-contract, however. *See Davies, supra*, 14 Cal.3d at 509–12, 121 Cal.Rptr. at 709–11, 535 P.2d at 1166–67 (statute of limitations governing contract actions to enforce unwritten obligations applies to suit for breach of confidence rather than limitations period governing actions for constructive fraud, since suit is correctly characterized as lying in quasi-contract). Since, as stated in the text, plaintiff cannot bring a quasi-contract action under California law to protect his ideas, plaintiff is precluded from recovery on this theory as well.

4. In the cases cited by Nimmer in support of this theory the facts and circumstances were far more suggestive of the existence of a contract than in the present case. In *Desny v. Wilder, supra*, plaintiff submitted to Billy Wilder's secretary a story based on the life of cave explorer Floyd Collins. The secretary had instructed plaintiff to submit the synopsis because Wilder was too busy to respond to his call. Plaintiff not only told the secretary that he would have to be paid if the story were used, but he in fact read the synopsis to the secretary over the phone. On these alleged facts the California Supreme Court reversed the lower court's grant of summary judgment, finding that there were triable issues as to the existence of an implied-in-law or implied-in-fact contract for the use of plaintiff's ideas.

In *Donahue v. Ziv, supra*, the court found an implied-in-fact contract where plaintiffs, before submitting a format that they alleged was later

its validity for the moment since, as set forth below, plaintiff's contract claim will be dismissed on another ground.

## C. *Use of Plaintiff's Ideas*

As to the claim for breach of an implied-in-fact contract, I now address defendants' contention that there has been no showing of substantial similarity and, therefore, that there can be no recovery. Defendants are correct in urging that the plaintiff must ultimately demonstrate that defendant used his ideas in order to recover. *See Teich v. General Mills, Inc.*, 170 Cal. App.2d 791, 339 P.2d 627 (1959); *Sutton v. Walt Disney Products*, 118 Cal.App.2d 598, 258 P.2d 519 (1953). They are also correct in asserting that to survive a motion for summary judgment there must be sufficient evidence to create a triable issue on the question of use. *Weitzenkorn, supra*, 256 P.2d at 956–57. "[W]hether there is any question to present to the trier of fact is in the first instance a question of law." *Id.* at 956.

Defendants may be overstating their case, however, in their assumption that the copyright requirement of "substantial similarity" is applicable here. "If the only similarity is to an idea then by definition such similarity is not substantial in the copyright sense." Nimmer on Copyright, § 16.08[B], at 16–63 n. 58. The California courts have thus tended to require a lesser showing of similarity between works to withstand a motion for summary judgment, and have used a standard geared more to investigating the similarity between ideas rather than between the works as a whole. Applying this standard, summary judgment has been denied upon a finding that there was "some substantial similarity" between the products, *Kurlan v. Columbia Broadcasting*, 40 Cal.2d 799, 809, 256 P.2d 962, 969 (1953); that it was "conceivable" that some similarity could be shown, *Weitzenkorn, supra*, 256 P.2d at 958; or that there were "enough similarities in basic plot idea, themes, sequences, and dramatic gimmicks" for a jury to infer use. *Minniear, supra*, 72 Cal.Rptr. at 294.

■ Even under this more flexible standard, I find that this case must succumb to a motion for summary judgment. In contrast to the above cited cases, there are *no* similarities between the ideas contained in defendants' production and plaintiff's work, from which use could reasonably be inferred. The only element in common between the two works is the use of a rock band and original music.[5] The ages and

---

used by the producers of the "Sea Hunt" television series, had numerous conversations with the producers in which compensation was discussed. The court's holding was premised on the finding that there was strong evidence that the recipient of the disclosure "realized all along that plaintiffs expected to be paid for their idea." 245 Cal.App.2d at 606, 54 Cal.Rptr. at 138.

That the holdings in these cases should be read narrowly is indicated by the following language from *Desny, supra:*

The idea man who blurts out his idea without having first made his bargain has no one but himself to blame for the loss of his bargaining power. The law will not in any event, from demand stated subsequent to the unconditional disclosure of an abstract idea, imply a promise to pay for the idea, for its use, or for its previous disclosure. The law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue. So, if the plaintiff here

is claiming only for the conveyance of the idea of making a dramatic production out of the life of Floyd Collins he must fail unless in conformity with the above stated rules he can establish a contract to pay.

46 Cal.2d at 739, 299 P.2d at 270, *quoted in Faris v. Enberg*, 97 Cal.App.3d 309, 319, 158 Cal.Rptr. 704, 709 (1979) (upholding grant of defendants' motion for summary judgment on implied-in-fact contract claim).

Given these precautions, as well as the total absence of any alleged facts in the present case from which one could logically infer the assumption of an obligation by defendants to pay for the use of plaintiff's script, I would be inclined to grant summary judgment on this basis. Nevertheless, since the facts surrounding the submission of plaintiff's script are still somewhat vague, I will rely instead on the grounds asserted in section II–C to support the grant of summary judgment.

5. That this similarity alone cannot create an inference of use is virtually conceded by plaintiff. While access is not an issue presently be-

activities of the members of the two groups are entirely different. While there are some scenes in "The Righteous Apples" dealing with street crime and related mischief, the group in this program could hardly be compared with the members of "Boomerang," whose major endeavor in the script apart from their music is crime fighting. This ephemeral, rock-band similarity does not raise a factual question that requires submission to a jury. As a matter of law, I find that defendants have not used plaintiff's ideas and that plaintiff thus has no viable contract claim. *See Weitzenkorn, supra.*

### III. *Conclusion*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants' motion for summary judgment is granted.

SO ORDERED.

fore this Court, plaintiff has readily admitted that the pilot version of "The Righteous Apples" was written well before the submission of plaintiff's script. Since the pilot itself contained the idea of an interracial rock band, it is apparent that the use of other, or more developed, ideas must be the subject of plaintiff's complaint.